STATE OF NEBRASKA EX REL. DON STENBERG, ATTORNEY
GENERAL OF THE STATE OF NEBRASKA, APPELLANT, V.
SCOTT MOORE, SECRETARY OF
STATE OF THE STATE OF NEBRASKA, APPELLEE.

602 N.W.2d 465

Filed November 19, 1999. No. S-98-983.

Don Stenberg, Attorney General, L. Steven Grasz, and Dale Comer for appellant.

Michael F. Coyle, Special Assistant Attorney General, and Michael L. Schleich, of Fraser, Stryker, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The Attorney General, Don Stenberg, appeals a decision of the district court which upheld the constitutionality of Neb. Rev. Stat. § 32-1409(1) (Reissue 1998). Section 32-1409(1) provides that signatures on initiative petitions will not be presumed to be valid unless the printed name, date of birth, street and number or voting precinct, and city, village, or post office address match the voter registration records. Under Neb. Const. art. III, § 4, the initiative and referendum process is self-executing, but legislation may be enacted to facilitate its operation. We conclude that on its face, § 32-1409(1) does not facilitate the operation of the initiative process and thus is unconstitutional. Accordingly, we reverse.

## I. BACKGROUND

The appellee, Secretary of State Scott Moore, serves as the state's chief election officer and administers the election laws of

the state. When Nebraska citizens seek to change the law or the state Constitution through the initiative or referendum process, they are required to submit the proposed language for the change to Moore's office, which assists the petitioners in preparing a form to be circulated. In order to place a proposed change on the ballot, the petitioners must obtain signatures of 10 percent of the registered voters in the state as of the date the petition is due to be returned to Moore's office. See Neb. Const. art. III, § 2; *Duggan v. Beermann*, 245 Neb. 907, 515 N.W.2d 788 (1994). Moore then begins a process of verifying the signatures on the petition pursuant to § 32-1409(1).

Before September 9, 1995, § 32-1409(1) (Cum. Supp. 1994) provided:

> Upon the receipt of the petitions, the Secretary of State, with the aid and assistance of the election commissioner or county clerk, shall determine the validity and sufficiency of signatures on the pages of the filed petition. The Secretary of State shall deliver the various pages of the filed petition to the election commissioner or county clerk . . . . The election commissioner or county clerk shall compare the signature of each person signing and the circulator upon each of the pages of the petition with the voter registration records to determine if the circulator was a registered voter on the date of signing the petition and to determine if each signer was a registered voter on or before the date on which the petition was required to be filed with the Secretary of State. *The election commissioner or county clerk shall also compare the signer's street and number or voting precinct and city, village, or post office address with the voter registration records to determine whether the signer was a registered voter. All signatures and addresses shall be presumed to be valid signatures and addresses if the election commissioner or county clerk has found the signers to be registered voters on or before the date on which the petition was required to be filed with the Secretary of State, except that such presumption shall not be conclusive and may be rebutted by any credible evidence which the election commissioner or county clerk finds sufficient.* The express purpose of the comparison of

names and addresses with the voter registration records, in addition to helping to determine the validity of such petition, the sufficiency of such petition, and the qualifications of the signer, shall be to prevent fraud, deception, and misrepresentation in the petition process.

(Emphasis supplied.) The Legislature subsequently passed 1995 Neb. Laws, L.B. 337, effective September 9, 1995. Following L.B. 337, the Legislature passed 1997 Neb. Laws, L.B. 460, effective September 13, 1997, which slightly modified § 32-1409(1). Thus, the changed language of § 32-1409(1) emphasized above, as amended by L.B. 337 and L.B. 460, now reads:

The election commissioner or county clerk shall also compare the signer's printed name, date of birth, street and number or voting precinct, and city, village, or post office address with the voter registration records to determine whether the signer was a registered voter. The signature, date of birth, and address shall be presumed to be valid only if the election commissioner or county clerk finds the printed name, date of birth, street and number or voting precinct, and city, village, or post office address to match the registration records . . . . The finding of the election commissioner or county clerk may be rebutted by any credible evidence which the Secretary of State finds sufficient.

Section 32-1409(4) provides that "[t]he Secretary of State may adopt and promulgate rules and regulations for the issuance of all necessary forms and procedural instructions to carry out this section."

Following the change in § 32-1409(1), the Attorney General brought this declaratory judgment action contending that § 32-1409(1) was facially unconstitutional. The Attorney General also sought an injunction enjoining Moore from implementing § 32-1409(1). During the hearing on the issue, Moore offered evidence regarding the manner in which his office administered § 32-1409. According to Moore, once petitions are filed with his office, he sends them to each of the separate counties in the state. Moore also provides the counties with "guidelines" on how to complete the verification process. These guide-

lines state that the county officials should use their best efforts to verify a signature as opposed to disqualifying a signature.

Under the guidelines, a signature that utilizes a nickname can be counted if it is a shortening of the name or is on a list of approved nicknames. According to Moore, if a registered voter signed a petition using a nickname instead of the full name he or she had registered under, the signature would be presumed to be valid and would be counted if the nickname used was on the list. Moore also testified that if a voter's registration record showed his or her address as a specific rural address, but the voter signed a petition using only a rural route number, the signature should be counted under his guidelines. According to Moore, the guidelines he sent to county officials required them to "find some sort of conversion to make sure that those count." The guidelines also provide that signatures with errors such as a missing or incomplete year for the date or a misspelling of a street or village name should be counted.

Neal Erickson, an employee in Moore's office, testified that under some circumstances, the signature of a registered voter might not be counted. For example, a registered voter who moves within the same county is still qualified to vote without changing his or her registration prior to the election. See Neb. Rev. Stat. § 32-914.02 (Reissue 1998). However, if a person signed a petition using a new address that did not match the address found in the voter registration records, the signature would not be counted. According to Moore, the signature could not be counted in such circumstances because there would be nothing on the record to prove that the signer was a registered voter.

Erickson further testified that if a person used initials or a nickname not found on the list provided by Moore, the signature would not be counted if it did not match the name shown in the registration records. In addition, Moore's testimony indicated that the failure of a person to write down the name of the city or town his or her address was located in or the ZIP code would likely result in the signature not being counted even if all other information matched the registration records. The guidelines Moore provides to the counties clearly states that if the name of the city or village is left blank, the signature may not be counted.

In a memorandum and order on temporary injunction filed on July 29, 1998, the district court applied the proposition of law that it must " 'give a statute an interpretation which meets constitutional requirements if it can reasonably be done.' " The court determined that the requirement that each signer be a registered voter was constitutionally mandated and concluded that the requirements of § 32-1409(1) did not interfere with or impede that mandate. In reaching this determination, the court concluded that § 32-1409(1) did not require an "exact match" of information and that there was no constitutional requirement that signatures on a petition be presumed to be valid. The district court then "ordered" as follows: "[T]he temporary injunction is denied. Relator and Respondent shall advise the Court within fourteen (14) days of any reason they have why this decision should not become a permanent and final decision in this case." In an order filed on August 13, the district court stated that "the Court's Order dated July 29, 1998, is the final permanent order and the Relator's Petition for Injunction is dismissed." The Attorney General filed his notice of appeal with the district court on September 8. On October 21, we issued an order to show cause as to why the appeal should not be dismissed for lack of jurisdiction for failure to meet the 30-day requirement of Neb. Rev. Stat. § 25-1912 (Cum. Supp. 1998).

## II. ASSIGNMENTS OF ERROR

The Attorney General assigns that the district court erred in failing to find that § 32-1409(1) violated article III of the Nebraska Constitution and in failing to apply the correct standard of scrutiny when considering a statute that restricts the initiative petition process.

## III. STANDARD OF REVIEW

The determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its own conclusions independent from that of the trial court. *Eli's, Inc. v. Lemen*, 256 Neb. 515, 591 N.W.2d 543 (1999).

Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach

a conclusion independent of the decision reached by the court below. *Bauers v. City of Lincoln*, 255 Neb. 572, 586 N.W.2d 452 (1998); *Ploen v. Union Ins. Co.*, 253 Neb. 867, 573 N.W.2d 436 (1998).

## IV. ANALYSIS

### 1. JURISDICTION

Whether we have jurisdiction to hear this appeal depends on which order is the final order in the case. The confusion arises because the district court, in an order filed August 13, 1998, declared that the order dated July 29, 1998, was the final order. Pursuant to § 25-1912, a party has 30 days in which to appeal from a final order. Thus, if the order filed July 29 was the final order, then the appeal was filed out of time. The Attorney General contends that it would be improper to allow the district court to retroactively establish a prior order as the final order because such action can have the effect of depriving a party of the full 30 days in which to file an appeal. The Attorney General further argues that if such a retroactive application is allowed, the time to appeal could effectively be eliminated in some cases by the action of the district court.

A "judgment" is a court's final consideration and determination of the respective rights and obligations of the parties to an action as those rights and obligations presently exist. *Lemburg v. Adams County*, 225 Neb. 289, 404 N.W.2d 429 (1987); Neb. Rev. Stat. § 25-1301 (Reissue 1995). Orders which specify that a trial court will exercise its jurisdiction based upon future action or inaction by a party are conditional and therefore not appealable. *Deuth v. Ratigan*, 256 Neb. 419, 590 N.W.2d 366 (1999).

> "[A] conditional judgment is wholly void because it does not 'perform in praesenti' and leaves to speculation and conjecture what its final effect may be. [Citation omitted.] . . . [F]inal judgments must not be conditional, and unless there is an equitable phase of the action wherein it is necessary to protect the interests of defendants, a conditional judgment is wholly void."

*Schaad v. Simms*, 240 Neb. 758, 759, 484 N.W.2d 474, 475 (1992), quoting *Lemburg v. Adams County, supra*.

In this case, despite the fact that the district court utilized its August 13, 1998, order to label the July 29 order as the final order in the case, the July 29 order was not final. At the time the July 29 order was made, it was conditional upon the future action or inaction of the parties. Thus, the order failed to operate in the present and would not have been a final, appealable order. The order filed August 13 is the final order in the case, as it was this order which had the effect of dismissing the action. We read the reference to the July 29 order as incorporating the reasoning of that order into the final order of August 13. Accordingly, the Attorney General timely filed this appeal, giving us jurisdiction over the case.

### 2. Constitutional Issue

The Attorney General contends that § 32-1409(1) is facially unconstitutional because it requires an "exact match" between the information a signer places on a petition and the voter registration records. As a result, some signatures do not get counted even though the signers are registered voters. The Attorney General contends that § 32-1409(1) is unconstitutional because it creates a hardship for voters, creates situations in which signatures are improperly presumed to be invalid, and because the Legislature can only legislate the initiative process in order to facilitate the process and prevent fraud. Moore contends that § 32-1409(1) does not require an "exact match" and that the provision does act to prevent fraud. Moore further argues that although signatures that do not match the voter registration records are not presumed to be valid, it does not mean the signatures are presumed to be invalid. Rather, Moore contends that signatures that do not match simply require additional inquiry before they can be counted.

### (a) Interpretation of Term "Match" in § 32-1409(1)

Each party points to differing definitions of the word "match" in § 32-1409(1). The Attorney General contends that the term means an "exact match" while Moore argues that the term means something akin to "substantially similar." Each party also cites to the legislative history of L.B. 337 to support their respective positions.

■ In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *SID No. 1 v. Nebraska Pub. Power Dist.*, 253 Neb. 917, 573 N.W.2d 460 (1998); *County of Sherman v. Evans*, 252 Neb. 612, 564 N.W.2d 256 (1997). In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Hagelstein v. Swift-Eckrich*, 257 Neb. 312, 597 N.W.2d 394 (1999); *Central States Found. v. Balka*, 256 Neb. 369, 590 N.W.2d 832 (1999). However, a statute is open for construction when the language used requires interpretation or may reasonably be considered ambiguous. *Kimball v. Nebraska Dept. of Motor Vehicles*, 255 Neb. 430, 586 N.W.2d 439 (1998); *State ex rel. City of Elkhorn v. Haney*, 252 Neb. 788, 566 N.W.2d 771 (1997).

■ The use of the term "match" in the statute is ambiguous. Webster's Third New International Dictionary, Unabridged 1391 (1993), provides in part the following definitions for the word "match": (1) A person or thing that equals or resembles another in some respect or (2) a person or thing that is an exact counterpart of another. Accordingly, the term "match" in § 32-1409(1) may be interpreted in differing ways, thus requiring that we construe the meaning of the term. A court may examine the legislative history of the act in question in order to ascertain the intent of the Legislature. *Goolsby v. Anderson*, 250 Neb. 306, 549 N.W.2d 153 (1996); *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue*, 248 Neb. 518, 537 N.W.2d 312 (1995).

The legislative history of L.B. 337 indicates that the Legislature was concerned that under the old law, county officials were required to make judgment calls regarding whether the signer of a petition was a registered voter. The history indicates that the Legislature wanted to place decisions regarding problems such as the use of nicknames with the Secretary of State in order to achieve a more uniform interpretation and application of § 32-1409(1).

The history also shows that the Legislature was made aware of possible constitutional problems with § 32-1409(1). Due to

concerns regarding constitutionality, various amendments were proposed which would have presumed signatures to be valid if they "substantially" matched the registration records or would have provided a definition of "match" that would allow signatures to be counted if they were substantially the same as the voter registration records. The proposed amendments did not pass, and the history indicates that by rejecting the amendments, the Legislature was specifically rejecting a term that would allow signatures that were "substantially similar" to the registration records to be counted. Thus, a reading of the history as a whole indicates that the Legislature intended to require an "exact match" between the signatures on petitions and the registration records, at least at the level where the signatures were being considered by county officials. The history further indicates that the Legislature also intended for such signatures to be presumed invalid by county officials.

The history, however, also indicates that the Legislature intended the Secretary of State to be able to count signatures that were not an exact match with the registration records in some instances. For example, the history indicates that some members of the Legislature were of the belief that the Secretary of State could promulgate rules and regulations regarding when some signatures that did not exactly match the registration records could be counted. Although § 32-1409(4) provides that the Secretary of State may promulgate "procedural instructions" to carry out the statute, § 32-1409(1) never states an intention for the Secretary of State to be able to provide exceptions to the requirement that the information on the petition match the registration records. Further, proposed amendments to L.B. 337 that would have expressly stated this intention in § 32-1409(1) were specifically rejected by the Legislature. Accordingly, as § 32-1409(1) reads on its face, the Secretary of State has the power to promulgate instructions only regarding how to carry out the requirements of § 32-1409(1). To hold that the Secretary of State could promulgate exceptions to the matching requirement of § 32-1409(1) would be reading an additional provision into the statute. It is not within the province of a court to read a meaning into a statute that is not warranted by the legislative

language. *Central States Found. v. Balka*, 256 Neb. 369, 590 N.W.2d 832 (1999).

Accordingly, the legislative history shows that § 32-1409(1) requires an "exact match" of information, and the statute does not on its face provide for the Secretary of State to allow county officials to make exceptions to the matching requirement. Thus, the next issue is whether § 32-1409(1) is facially unconstitutional by requiring an "exact match" between the information required on the petition and the voter registration records.

### (b) Constitutionality of § 32-1409(1)

The Attorney General contends that § 32-1409(1) violates article III of the Nebraska Constitution on its face because it does not act to facilitate the operation of the initiative process and creates a presumption that signatures that do not exactly match the voter registration records are invalid. Moore contends that § 32-1409(1) does not create any presumptions regarding the invalidity of signatures and interprets § 32-1409(1) to mean that when the information does not match, further investigation is necessary.

The provisions of the Nebraska Constitution dealing with the initiative provide in part:

> The people reserve for themselves, however, the power to propose laws, and amendments to the constitution, and to enact or reject the same at the polls, independent of the Legislature, and also reserve power at their own option to approve or reject at the polls any act, item, section, or part of any act passed by the Legislature.

Neb. Const. art. III, § 1. "The first power reserved by the people is the initiative whereby laws may be enacted and constitutional amendments adopted by the people independently of the Legislature." *Id.*, § 2. "The provisions with respect to the initiative and referendum shall be self-executing, but legislation may be enacted to facilitate their operation." *Id.*, § 4.

By the foregoing constitutional provisions, the people of Nebraska have reserved the power to propose and enact laws independent of the Legislature. Consequently, the Legislature and the electorate are concurrently equal in rank as sources of

legislation, and provisions authorizing the initiative should be construed in such a manner that the legislative power reserved in the people is effectual. *State ex rel. Brant v. Beermann*, 217 Neb. 632, 350 N.W.2d 18 (1984); *Klosterman v. Marsh*, 180 Neb. 506, 143 N.W.2d 744 (1966). Thus, we have stated that " '[t]he right of initiative is precious to the people and is one which the courts are zealous to preserve to the fullest tenable measure of spirit as well as letter.' " *State ex rel. Brant v. Beermann*, 217 Neb. at 636, 350 N.W.2d at 21, quoting *McFadden v. Jordan*, 32 Cal. 2d 330, 196 P.2d 787 (1948).

 We have described the ability of the Legislature under article III, § 4, to pass laws in order to facilitate the initiative process as follows:

"[T]he constitutional provision authorizing the legislature to enact laws to facilitate the operation of the initiative power means that it may enact reasonable legislation to prevent fraud or to render intelligible the purpose of the proposed law or constitutional amendment. See *State v. Amsberry*, 104 Neb. 273, 177 N.W. 179. Any legislative act which tends to insure a fair, intelligent, and impartial result on the part of the electorate may be said to facilitate the exercise of the initiative power."

*State ex rel. Stenberg v. Beermann*, 240 Neb. 754, 755-56, 485 N.W.2d 151, 152 (1992), quoting *State, ex rel. Winter v. Swanson*, 138 Neb. 597, 294 N.W. 200 (1940). Therefore, we have said that " '[c]onstitutional provisions with respect to the right of initiative and referendum reserved to the people should be construed to make effective the powers reserved.' " *State ex rel. Stenberg v. Beermann*, 240 Neb. at 756, 485 N.W.2d at 152, quoting *Klosterman v. Marsh, supra*. Legislation which hampers or renders ineffective the power reserved to the people is unconstitutional. *State ex rel. Stenberg v. Beermann, supra*; *State ex rel. Morris v. Marsh*, 183 Neb. 521, 162 N.W.2d 262 (1968); *Klosterman v. Marsh, supra*. However, it is also clearly the duty of this court to give a statute an interpretation which meets constitutional requirements if it can reasonably be done. *State ex rel. Morris v. Marsh, supra*.

In *State ex rel. Morris v. Marsh, supra*, this court considered whether electors' signatures on pages of petitions could be

counted when the circulator had not signed his or her full given name as required by statute. We noted the fact that petition circulators were required to file verification affidavits stating under oath that he or she was a legal and qualified voter of the state. We further recognized that at that time, it was a felony for a person not registered to vote to circulate a petition. We then stated that "[i]n the light of such criminal sanctions and the specific constitutional provisions preserving the right of initiative, presumptions must be in favor of legality rather than illegality." *Id.* at 528, 162 N.W.2d at 267. We concluded that where the circulator had signed and sworn to a properly executed statutory form of affidavit that he or she was a legal and qualified voter of the state, there is a presumption that he or she is a qualified elector in the absence of affirmative evidence to the contrary and this presumption did not disappear simply because he or she did not sign his or her full given name.

We also considered in *State ex rel. Morris v. Marsh, supra,* whether signatures could be counted on a petition when the signer failed to provide the date, used ditto marks for part or all of the address, or portions of the address were written by someone else. Many of the signatures that lacked dates were situated between two signatures that were correctly dated and which both bore the same date. We noted that the date was important in order to determine if the signer was an elector on the date of signing. We then stated:

> The problem of what presumptions shall apply in the construction of statutory provisions which are constitutionally permitted to "facilitate" the exercise of the initiative power reserved to the people has often been considered by the courts. As this court said in State ex rel. Ayres v. Amsberry, *supra*; "The amendment under consideration reserves to the people the right to act in the capacity of legislators. The presumption should be in favor of the validity and legality of their act. The law should be construed, if possible, so as to prevent absurdity and hardship and so as to favor public convenience."
>
> The decisions almost universally hold that the power of initiative must be liberally construed to promote the democratic process and that the right of initiative constitution-

> ally provided should not be circumscribed by restrictive legislation or narrow and strict interpretation of the statutes pertaining to i[t]s exercise.

*Id.* at 531, 162 N.W.2d at 269. Accordingly, we held that on an otherwise validly executed initiative petition form, where the actual and exact date on which the signature of the elector was signed was readily apparent, the omission or faulty rendition of the date should be treated as a clerical or technical error and constituted substantial compliance. Under such circumstances, the signatures would be counted. We further held that the use of ditto marks did not invalidate the signatures.

In the instant case, § 32-1409(1) requires an exact match of information on petitions with information in the voter registration records. Further, the previous version of the statute contained a rebuttable presumption that signatures were valid when the county official had made the determination that the signer was a registered voter. This presumption was in line with our reasoning in *State ex rel. Morris v. Marsh*, 183 Neb. 521, 162 N.W.2d 262 (1968), and *State, ex rel. Ayers v. Amsberry*, 104 Neb. 273, 177 N.W. 179 (1920), *dismissed* 104 Neb. 279, 178 N.W. 822. Under the amended version of § 32-1409(1), signatures are no longer presumed to be valid. Although the language of § 32-1409(1) is unclear on whether a signature is presumed to be invalid when there is not an exact match, the legislative history indicates that a presumption against validity would be the case. At a minimum, the legislative history and the language of § 32-1409(1) show that when there is not an exact match, additional information is necessary in order to count the signature and that this information would have to be provided to the Secretary of State by the voter or group submitting the petitions.

A requirement that the voters be responsible for independently proving the validity of signatures that were invalidated because they did not exactly match the registration records is contrary to the high value we place on the right of the people to engage in the initiative and referendum process. Any presumption must be in favor of the legality of the signer's act. Further, it is clear from *State ex rel. Morris v. Marsh, supra,* that signatures cannot be discounted due to technical errors. The exact match requirement of § 32-1409(1) has the potential to cause

some signatures not to be counted on the basis of technical errors.

Section 32-1409(1) also cannot be considered as a necessary provision for the prevention of fraud. Less onerous provisions are already in place to prevent fraud in the initiative and referendum process. For example, it is a crime to falsify information on a petition or for an unregistered voter to sign a petition. See, e.g., Neb. Rev. Stat. § 32-1546 (Reissue 1998). A provision enacted to prevent fraud that also has the effect of causing the signatures of some registered voters not to be counted cannot be deemed to facilitate the initiative process. Finally, the legislative history indicates that § 32-1409(1) was enacted in part as a way to ease the counting process for county officials by placing decisions regarding signatures with the Secretary of State. However, the convenience of the public must take precedence over convenience to public officials in legislation affecting the initiative process. Section 32-1409(1) improperly hampers the public by making it more difficult for valid signatures to be counted.

The Secretary of State argues that in practice, things such as technical errors, the use of nicknames, and rural addresses do not prevent signatures from being counted. Thus, it is clear that § 32-1409(1) is not applied in a manner that requires an "exact match" or disqualifies signatures for technical errors. However, the Attorney General challenges § 32-1409(1) on its face and does not challenge it as it is applied. This court must judge the constitutionality of an act of the Legislature not necessarily by what has been done or possibly may be done under it, but by what the statute authorizes to be done under its provisions. *State v. Kelley*, 249 Neb. 99, 541 N.W.2d 645 (1996). As previously discussed, on its face, § 32-1409 does not state that it will be applied to allow for substantial compliance in some instances. Proposed amendments that would have put such language in § 32-1409(1) were specifically voted against by the Legislature.

## V. CONCLUSION

We interpret § 32-1409(1) to require an exact match between signature information placed on initiative petitions with the voter registration records. We further conclude that

such a provision does not facilitate the initiative process because it hampers the ability of the public to engage in the initiative process and does not act to prevent fraud. Accordingly, we find that § 32-1409(1) is unconstitutional. The order of the district court is reversed and the cause is remanded with directions to enter an order enjoining the Secretary of State from implementing § 32-1409(1).

REVERSED AND REMANDED WITH DIRECTIONS.