629 N.W.2d 534 (2001)
262 Neb. 129
FONTENELLE EQUIPMENT, INC., a Nebraska corporation, Appellant,
v.
PATTLEN ENTERPRISES, INC., doing business as Midwest Turf & Irrigation, Appellee.
No. S-99-1408.
Supreme Court of Nebraska.
July 6, 2001.
*537 James T. Gleason, P.C., Omaha, of Stalnaker, Becker, Buresh, Gleason & Farnham, P.C., for appellant.
Paul R. Elofson, Omaha, of McGill, Gotsdiner, Workman & Lepp, P.C., for appellee.
HENDRY, C.J., and WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
PER CURIAM.
This appeal presents the question whether the Equipment Business Regulation Act, Neb.Rev.Stat. ch. 87, art. 7 (Reissue 1994), applies to the relationship between Fontenelle Equipment, Inc. (Fontenelle), a dealer of outdoor power equipment, and Pattlen Enterprises, Inc., doing business as Midwest Turf & Irrigation (Pattlen), a distributor of Toro power lawn and garden equipment.

BACKGROUND
Fontenelle is engaged in the sale and repair of outdoor power equipment in Bellevue, Nebraska. In 1984, Fontenelle, then a sole proprietorship owned by Daniel Fischer, began carrying the Toro line of outdoor power equipment which was, at that point, distributed by Midwest Toro, Inc. Upon commencing the distribution relationship, Fontenelle and Midwest Toro entered into a sales account agreement and a service dealer agreement. Under the sales account agreement, Midwest Toro agreed to sell Toro parts and equipment to Fontenelle.
Under the service dealer agreement, Fischer agreed to maintain a service shop with adequate equipment, tools, and parts stock consistent with the recommendations of Toro. Midwest Toro agreed to maintain an adequate inventory of Toro parts to effectively support the efforts of Fontenelle.
At some point after Fischer and Midwest Toro began their business relationship, Fischer incorporated his business to form Fontenelle Equipment, Inc., in which Fischer, his wife, and another individual were shareholders. Also, Midwest Toro, Inc., at some point became Pattlen Enterprises, Inc., doing business as Midwest Turf & Irrigation. The business relationship between Fontenelle and Pattlen continued after the changes in the businesses' entity structures.
Over the course of Fontenelle businesses' relationship with Pattlen and Midwest Toro, Fontenelle had carried such Toro power equipment as commercial- and homeowner-grade lawnmowers; snow blowers; garden hoses; string trimmers; and garden tillers, used to disturb the soil. Fischer testified that over the course of the relationship and through Fontenelle's normal course of business, Fontenelle had accumulated a large number of spare parts for Toro equipment.
In August 1997, the distribution relationship between the parties ended and Fontenelle ceased carrying the Toro product line. After the relationship ended, Fontenelle requested that Pattlen repurchase the unused, resalable Toro parts, which Fontenelle had accumulated over the years, at 85 percent of the retail price. Fontenelle attempted to return the parts *538 to Pattlen, but Pattlen refused to accept them. Fontenelle then filed this action under the Equipment Business Regulation Act in an attempt to compel Pattlen to repurchase the unused, resalable spare parts at 85 percent of the retail price.
In its operative petition, Fontenelle asserted that it was a dealer of equipment used for horticultural purposes pursuant to the act and that such equipment was supplied by Pattlen. Fontenelle alleged that Pattlen gave Fontenelle oral notice that the commercial relationship between them was terminated and did not enumerate any of the reasons listed in § 87-705(1) for such termination. Further, Fontenelle alleged that it sent Pattlen a letter requesting that Pattlen repurchase parts and equipment from Fontenelle pursuant to the provisions of the act and that Pattlen refused to repurchase the parts. Pattlen denied the allegations and filed a counterclaim alleging that Fontenelle had purchased parts and equipment from Pattlen after the end of their relationship and that Fontenelle owed Pattlen $350.23 for such parts and equipment.
Fontenelle and Pattlen each filed motions for summary judgment. In granting Pattlen's motion for summary judgment and denying Fontenelle's motion for summary judgment, the court addressed the issues as follows: First, the district court addressed the termination of the agreement between Fontenelle and Pattlen. The court determined that "[a]lthough the matter [sic] in which it was terminated is in dispute, it is my finding, at this juncture, the greater weight of the evidence shows the termination to be one reached by mutual agreement of the parties." The court then turned to the application of the act and determined that the act was not applicable in the case at bar.
The district court determined that there was no oral or written agreement between Fontenelle and Pattlen whereby Fontenelle agreed to maintain an inventory of equipment, attachments, or repair parts. Second, the court determined that because the agreement ended by mutual agreement as opposed to the supplier terminating the agreement, the act does not apply. Next, the court stated that
although it appears to be a dispute between the parties, it is my finding and conclusion, by a greater weight of the evidence, that [Fontenelle] has failed to establish that the agreement and business relationship between the parties constituted a "dealer agreement" as defined under the Equipment Business Regulation Act.
Finally, after considering the legislative findings set forth in § 87-702, the district court determined that the act does not apply to this case because under the act's definition of "equipment," equipment used for horticultural purposes must involve an agricultural or industrial use and because the equipment at issue in this case was not for an agricultural or industrial use.
Fontenelle appealed the order of the district court that denied Fontenelle's motion for summary judgment and granted Pattlen's motion for summary judgment. We moved the case to our docket pursuant to our authority to regulate the dockets of the appellate courts.

ASSIGNMENTS OF ERROR
Fontenelle assigns, restated, that the district court erred in determining that (1) the Equipment Business Regulation Act did not apply, (2) § 87-703(5) was ambiguous and in need of construction, (3) there was no dealer agreement between the parties, and (4) the termination of the agreement between the parties was done by mutual agreement.

*539 STANDARD OF REVIEW
Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Daniels v. Allstate Indemnity Co., 261 Neb. 671, 624 N.W.2d 636 (2001). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Adams v. State, 261 Neb. 680, 625 N.W.2d 190 (2001).
Although the denial of a motion for summary judgment, standing alone, is not a final, appealable order, when adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct further proceedings as it deems just. Kirwan v. Chicago Title Ins. Co., 261 Neb. 609, 624 N.W.2d 644 (2001).
The interpretation of a statute presents questions of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. In re Estate of Sutherlin, 261 Neb. 297, 622 N.W.2d 657 (2001).

ANALYSIS
In the instant case, Fontenelle attempts to compel Pattlen to repurchase the spare Toro parts Fontenelle had accumulated over the course of its business relationship with Pattlen. Specifically, Fontenelle attempts to invoke § 87-707, which states, in relevant part, the following:
(1) Whenever any dealer enters into a dealer agreement with a supplier in which the dealer agrees to maintain an inventory of equipment, attachments, or repair parts and the dealer agreement is subsequently terminated, the supplier shall:
(a) Repurchase the inventory by:
. . . .
(ii) Paying eighty-five percent of the current price of all new, unused, and undamaged attachments and repair parts, including superseded repair parts, which are listed in the price lists or catalogs in use by the supplier on the date of termination[.]
We must first consider the issue whether the Equipment Business Regulation Act applies to the relationship between Fontenelle and Pattlen. The district court determined that the act does not apply in this case because Fontenelle is not a dealer of equipment as the term "equipment" is defined in the act.
In order for the act to apply, a dealer must be primarily engaged in the retail sale and service of equipment as defined in § 87-703. Section 87-703(5) states the following: "Equipment shall mean any machine designed for or adapted and used for agricultural, horticultural, livestock, grazing, forestry, or industrial purposes[ .]" Fontenelle asserts that the line of Toro equipment involved in its business relationship with Pattlen falls within the definition of equipment under the plain meaning of § 87-703(5) because lawnmowers, garden tillers, and string trimmers are machines designed or adapted and used for horticultural purposes. Pattlen disagrees and asserts that the Legislature *540 intended the horticultural purpose to be one involving agricultural or industrial use, not personal use equipment such as lawnmowers and garden tillers.
In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. In re Estate of Tvrz, 260 Neb. 991, 620 N.W.2d 757 (2001). In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. City of Lincoln v. Nebraska Liquor Control Comm., 261 Neb. 783, 626 N.W.2d 518 (2001). However, a statute is open for construction when the language used requires interpretation or may reasonably be considered ambiguous. State ex rel. Stenberg v. Moore, 258 Neb. 199, 602 N.W.2d 465 (1999).
We determine that the meaning of "horticultural," when read in the context of the language in § 87-703(5), is ambiguous. For instance, Webster's Third New International Dictionary, Unabridged 1093 (1993), provides that horticulture is "the science and art of growing fruits, vegetables, flowers, or ornamental plants," and yet, horticulture is also defined as "the cultivation of an orchard, garden, or nursery on a small or large scale." (Emphasis supplied.) Thus, the meaning of the statutory term "horticultural purpose" could include equipment suitable for private home use or equipment suitable for larger scale, agricultural or industrial use. The other purposes included in the meaning of "equipment" as listed in § 87-703(5)agricultural, livestock, grazing, forestry, and industrialare all purposes that relate to a commercial use of equipment. Whether the term "horticultural" relates to the personal use of equipment, such as mowing lawns or tending to backyard gardens, or to the commercial use of equipment for some other horticultural purpose is not entirely clear when the language of the statute is read as a whole. Therefore, the ambiguity in the statute requires us to resort to our rules of statutory interpretation to ascertain the meaning of the term "horticultural" as it is used in the context of § 87-703(5).
As an aid to statutory interpretation, appellate courts must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. Fay v. Dowding, Dowding, 261 Neb. 216, 623 N.W.2d 287 (2001). When considering a series or collection of statutes pertaining to a certain subject matter which are in pari materia, they may be conjunctively considered and construed to determine the intent of the Legislature, so that different provisions of the act are consistent and sensible. Id. A sensible construction will be placed upon a statute to effectuate the object of the legislation rather than a literal meaning that would have the effect of defeating the legislative intent. Wortman v. Unger, 254 Neb. 544, 578 N.W.2d 413 (1998).
The Legislature's express statement of intent with respect to the act, set forth in § 87-702, states the following:
The Legislature finds that the retail distribution and sales of agricultural and industrial equipment utilizing independent retail businesses operating under agreements with manufacturers, wholesalers, and distributors of such equipment vitally affect the general economy, public interests, and public welfare of the state and that it is necessary to regulate the business relationships *541 between the independent dealers and the equipment manufacturers, wholesalers, and distributors.
(Emphasis supplied.)
Reading §§ 87-702 and 87-703(5) in pari materia indicates that the Legislature intended to include in the definition of equipment only the type of horticultural machines that are used for agricultural or industrial purposes, not for personal uses such as backyard gardening and lawn mowing.
Further, when a statutory term is reasonably considered ambiguous, a court may examine the legislative history of the act in question in order to ascertain the intent of the Legislature. See State ex rel. Stenberg v. Moore, 258 Neb. 199, 602 N.W.2d 465 (1999). The stated aim of the Equipment Business Regulation Act was to give "Nebraska farm and industrial equipment dealers certain rights in their relationships with suppliers." See Statement of Intent, L.B. 123, Committee on Banking, Commerce, and Insurance, 92d Leg., 1st Sess. (Feb. 11, 1991). It is also noteworthy that before the enactment of the Equipment Business Regulation Act in 1991, an almost identical bill was introduced and failed to pass in 1990. That bill would have specifically included "outdoor power equipment" dealers in its regulatory scheme, and the definition of equipment would have included "any machine designed for ... lawn and garden purposes." See Banking, Commerce, and Insurance Hearing, L.B. 1000, 91st Leg., 2d Sess. 2-3 (Jan. 4, 1990).
At the 1990 committee hearing, however, it was proposed that these sections be amended to exclude the references to outdoor power equipment and lawn and garden equipment. See id., exhibit A (Jan. 22, 1990). The concern was that the reference to such equipment would include large retailers such as K mart and J.C. Penney and, thus, make the act broader in its protection than intended. See id. Although L.B. 1000 was indefinitely postponed in 1990, the 1991 version of the bill, which was passed into law, noticeably omits any reference to outdoor power equipment and lawn and garden equipment. See 1991 Neb. Laws, L.B. 123.
Finally, we note that the terms "agricultural" and "horticultural" are used connectively with great frequency in Nebraska statutes to connote land, activities, or products associated with farming and are used for purposes ranging from soil conservation to tax exemptions. See, e.g., Neb.Rev.Stat. § 2-4608 (Reissue 1997) (authorizing municipalities and counties to inspect complaints of excessive soil erosion which is result of agricultural, horticultural, or silvicultural activities); Neb.Rev. Stat. § 48-604(6)(a)(i) (Reissue 1998) (excluding agricultural labor, including those who cultivate soil "in connection with raising or harvesting any agricultural or horticultural commodity" from definition of employment for purpose of Employment Security Law); Neb.Rev.Stat. § 77-201(2) (Reissue 1996) (providing that agricultural land and horticultural land shall constitute separate and distinct class of property for purposes of property taxation). Compare Neb.Rev.Stat. § 76-1509 (Reissue 1996) (defining farming for trust purposes as "the cultivation of land for the production of agricultural crops, the raising of poultry, the production of eggs, the production of milk, the production of fruit or other horticultural crops, and grazing or the production of livestock").
Given the legislative findings in § 87-702 and the nature of the other purposes listed in § 87-702, the use of the term "horticultural" in § 87-703(5) is most reasonably construed as a reference to an agricultural or industrial use of equipment as opposed to a personal use. Therefore, *542 we conclude that the Legislature did not intend for the Equipment Business Regulation Act to apply to business agreements between retail dealers of lawn and garden equipment and their suppliers.
Summary judgment is proper where the facts are uncontroverted and the moving party is entitled to judgment as a matter of law. Mertz v. Pharmacists Mut. Ins. Co., 261 Neb. 704, 625 N.W.2d 197 (2001). Because it is undisputed that Fontenelle is a dealer of lawn and garden equipment, the district court properly granted summary judgment for Pattlen because the act does not apply to the relationship between Pattlen and Fontenelle. Therefore, we affirm the district court's judgment in this case.
Because the act does not apply to the relationship between Pattlen and Fontenelle, it is unnecessary for us to address Fontenelle's other assignments of error.

CONCLUSION
We conclude that Fontenelle, a lawn and garden equipment dealer, is not a dealer of equipment for purposes of the Equipment Business Regulation Act. Therefore, we affirm the judgment of the district court.
AFFIRMED.