Cross-claim plaintiff John M. Tyson, Sr., appeals from a summary judgment granted in favor of co-defendant Safeco Insurance Companies on a cross-claim seeking damages for breach of contract, outrage, and bad faith. The cross-claim arose from a suit filed by Simpson Construction Company against both Tyson and Safeco, after a dispute arose concerning repair work Simpson was engaged to perform on the fire-damaged home of Tyson. Safeco moved for and was granted summary judgment on the claim brought by Simpson, which was not appealed.
Summary judgment on this cross-claim was certified as final by the trial court and, hence, made appealable, pursuant to Rule 54 (b), Alabama Rules of Civil Procedure. We affirm.
The trial court set forth the following facts in its order granting summary judgment:
 "1. Safeco issued a policy of insurance covering the residence of Tyson and his wife at 419 LaBorde Drive in Mobile, Alabama, and such policy of insurance was in full force and effect on July 13, 1979, at which time such residence suffered a loss by fire.
 "2. Subsequent to such fire Simpson Construction Company, Inc. (hereinafter `Simpson'), was engaged to perform and, in fact, did perform certain work and labor in connection with repairing the fire damage suffered to the Tysons' residence as a result of the fire.
 "3. A dispute arose between the Tysons and Simpson as to the performance of the work and labor by Simpson, and as to the quality, sufficiency, and completeness of the work and labor performed by Simpson.
 "4. Safeco advanced TWO THOUSAND FIVE HUNDRED ($2,500.00) DOLLARS to Tyson under the dwelling coverage portion of the policy. Total damage to the dwelling was ELEVEN THOUSAND NINE HUNDRED SIX and 12/100ths ($11,906.12) DOLLARS, leaving a balance of NINE THOUSAND FOUR HUNDRED SIX and 12/100ths ($9,406.12) DOLLARS.
 "5. Safeco advanced NINE HUNDRED TWENTY-THREE ($923.00) DOLLARS to Servicemaster Cleaning under the contents coverage portion of its policy. There was remaining contents *Page 1310 
damage of THREE THOUSAND FORTY-ONE and 24/100ths ($3,041.24) DOLLARS, for a total of THREE THOUSAND NINE HUNDRED SIXTY-FOUR and 24/1100ths ($3,964.24) DOLLARS.
 "6. In a letter dated May 27, 1980, Simpson gave notice to Safeco that Simpson desired that any further drafts issued in payment for the damages sustained to the Tyson residence in such fire should include the name of Simpson Construction Company, Inc., as payee.
 "7. On December 12, 1980, a proof of loss was executed by Mr. and Mrs. Tyson. Safeco then paid them their remaining claim under contents coverage of $3,041.24 and also paid ONE THOUSAND EIGHT HUNDRED FORTY-SIX and 70/100ths ($1,846.70) DOLLARS under the additional living expense portion of the policy for a subtotal of FOUR THOUSAND EIGHT HUNDRED EIGHTY-SEVEN and 94/100ths ($4,887.94) DOLLARS, minus plaintiff's deductible of ONE HUNDRED ($100.00) DOLLARS for a total of FOUR THOUSAND SEVEN HUNDRED EIGHTY-SEVEN and 94/100ths ($4,787.94) DOLLARS.
 "8. On May 14, 1981, pursuant to advice of counsel, Safeco issued a draft in the sum of $9,406.12, being the full amount then owed by Safeco as the balance for the fire loss made the subject of this lawsuit, and included as payees on that draft the following: John Malcolm Tyson and Grace D. Tyson, Simpson Construction and Jacksonville National Bank. That draft was forwarded to Mr. and Mrs. Tyson and was subsequently returned by the Tysons to Safeco.
 "9. Tyson notified Safeco that payments of the money should be made to him without regard to the claim of Simpson.
 "10. On July 24, 1981, Simpson filed suit for damages arising from work done on Tyson's property, and named as defendants both Tyson and Safeco.
 "11. On September 2, 1981, Safeco answered Simpson's complaint and petitioned the Court for a bill of interpleader. The court denied Safeco's motion to interplead monies on November 20, 1981.
 "12. Tyson then filed his cross-claim against Safeco on July 14, 1982, alleging (1) breach of contract, (2) `outrageous, reckless, wanton, malicious and oppressive conduct' and (3) `the tort of bad faith.'
 "13. On July 19, 1982, Safeco moved for summary judgment as to the claim of Simpson. The Court granted this motion on August 13, 1982, and entered an order of final judgment on August 27, 1982.
 "14. The FORTY-TWO (42) day period allowable for Simpson to take an appeal from the above order of final judgment expired on Friday, October 8, 1982.
 "15. On the next business day, October 11, 1982, Safeco through its attorney forwarded a draft to Tyson's attorney in the amount of $9,406.12, representing the remainder due the Tysons under their proof of loss.
 "16. After conducting discovery, Safeco moved for summary judgment as to Tyson's cross-claim on January 24, 1983. The Court granted this motion on May 20, 1983.
 "17. Tyson thereafter moved to reconsider the ruling on Safeco's motion of summary judgment. The Court denied this motion and entered an order of final judgment in favor of Safeco on July 7, 1983.
 "18. On August 19, 1983, the last day for Tyson to take an appeal from the above final judgment, Safeco's attorney waived the appeal date in a telephone conversation with the trial judge.
 "19. On August 26, 1983, the Court granted plaintiffs motion for relief from judgment and set aside Safeco's motion for summary judgment.
 "20. On [January] 23, 1984, Safeco refiled its motion for summary judgment.
 "21. On February 17, 1984, after considering additional affidavits submitted by Mr. and Mrs. Tyson, the Court heard Safeco's motion for summary judgment." *Page 1311 
The court thereupon granted Safeco's motion for summary judgment. This appeal followed.
Tyson's contract claim against Safeco, including accrued interest, was fully satisfied prior to this appeal. Remaining for our consideration, therefore, are the claims for outrage and bad faith.
 Outrageous Conduct
We first recognized an independent theory of recovery for the intentional or reckless infliction of emotional distress inAmerican Road Service Company v. Inmon, 394 So.2d 361 (Ala. 1980). Expressly utilizing the language of § 46, Restatement(Second) of Torts (1948), we wrote:
 "(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."
394 So.2d at 362.
We also adopted in Inmon, Comment (d) of § 46 of theRestatement, which defines the proscribed behavior as conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."Restatement, supra, at 72.
In the instant case, there was nothing in Safeco's actions to amount to conduct so outrageous and extreme as to be "utterly intolerable in a civilized community." Safeco wanted to pay Tyson and Simpson jointly to avoid the possibility of double liability. Significantly, after the time to appeal the summary judgment Safeco obtained against Simpson lapsed, along with the possibility of double liability, Safeco promptly paid Tyson all monies due under the insurance contract. It is clear, therefore, that the trial court properly withheld this count from the jury. Empiregas, Inc. of Gadsden v. Geary,431 So.2d 1258 (Ala. 1983).
 Bad Faith
The elements which must be proven to establish a prima facie case of bad faith refusal to pay an insurance claim are as follows:
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim."
National Security Fire Casualty Co. v. Bowen, 417 So.2d 179,183 (Ala. 1982).
Additionally, we have held that in a normal case, the plaintiff must be entitled to a directed verdict on the contract claim as a matter of law. National Savings Life Ins.Co. v. Dutton, 419 So.2d 1357 (Ala. 1982). Thus, a plaintiff's burden of proving facts sufficient to sustain a case of bad faith is a heavy one.
In the instant case, it is readily evident that Tyson has not sustained this burden.
Safeco's refusal to unconditionally pay the claim owed Tyson was prompted by a demand by Simpson to be named as a joint payee on any further checks representing payments under the insurance policy. We note that Safeco's fear of double liability in this regard was not unfounded. Simpson, for example, by virtue of performing work on the home of Tyson, was entitled to a lien on the house, the land, and any other improvements thereon to insure payment for its work. Ala. Code 1975, § 35-11-210. This Court need not, however, determine in hindsight the precise legal relationships between Safeco, Tyson, and Simpson, to conclude that Safeco was *Page 1312 
faced with a situation of sufficient uncertainty to supply it with a debatable reason to act in the manner it did.
Summary judgment, therefore, in favor of Safeco on the bad faith count was proper.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, SHORES and BEATTY, JJ., concur.