GREAT WEST CASUALTY
COMPANY, Appellant,

v.

Loren Lee CHRISTENSON, et al., Defendant,

Schmidt Livestock and Trucking Company, Leonard Gartner, Illinois Farmers Insurance Company, et al., Respondents.

No. C3-89-1266.

Court of Appeals of Minnesota.

Jan. 9, 1990.

Review Denied March 16, 1990.

Philip A. Pfaffly, Dale M. Wagner, Christopher L. Farwell, Moss & Barnett, P.A., Minneapolis, for appellant.

Stephen R. Erickson, Peterson, Chesterman, Erickson, Anderson & Hareid, P.A., Albert Lea, for Schmidt Livestock and Trucking Co.

James M. Riley, Meagher, Geer, Markham, Anderson, Adamson, Flaskamp & Brennan, Minneapolis, for Leonard Gartner.

James Christopher Wicka, Messerli & Kramer, Minneapolis, for Illinois Farmers Ins. Co., et al.

Heard, considered and decided by GARDEBRING, P.J., and FORSBERG and RANDALL, JJ.

OPINION

RANDALL, Judge.

Appellant Great West Casualty Company brought a declaratory judgment action seeking a determination that it had no obligation to defend or indemnify its insured, Schmidt Livestock and Trucking Company. The trial court found that Great West was not relieved of its duty to defend and indemnify Schmidt Trucking and that Great West's insurance policy provides coverage for all the claims made by the plaintiffs in the underlying personal injury action. Great West appeals that determination. We affirm.

FACTS

On January 29, 1987, Alan Strenge was involved in a motor vehicle accident in Lakeville, Minnesota. In March 1988, Alan and Julie Strenge commenced a personal injury action against the driver of the other vehicle, Loren Lee Christenson; the owner

of the other vehicle, Schmidt Livestock and Trucking Company; and the owner of the trailer, Leonard Gartner.

Appellant Great West is a Nebraska insurance corporation. Great West provided insurance coverage to Schmidt Trucking for the policy period of January 25, 1986 to January 25, 1987. The relevant statute read:

> Before a certificate or permit is issued to a motor carrier, the motor carrier shall secure and cause to be filed with the Commissioner and maintain in full effect, a certificate of insurance in a form required by the commissioner, evidencing public liability and indemnity insurance in an amount and in a form prescribed by the commissioner. * * * *Insurance issued to satisfy the requirements of this subdivision is subject to cancellation for nonpayment of premiums or withdrawals from service of a vehicle or vehicles covered by insurance upon not less than 30 days written notice to the insured and to the commissioner.*

Minn.Stat. § 221.141, subd. 1 (1984) (emphasis added).

Pursuant to this statutory requirement, the Public Utilities Commission promulgated the following rule:

> Each insurance company insuring motor carriers operating under the authority of the commission in Minnesota shall cover all motor vehicles whether specifically described in the policy or not by filing with the commission a Certificate of Insurance, Form E, naming each carrier, respectively, insured thereunder; Notice of Cancellation of Motor Carrier Certificate of Insurance shall be on Form K. * * *.

Minn.R. 7805.2000 (1985).

As required by the statute and rule, Great West and Schmidt Trucking filed with the commission a Form E, which specified that Great West had issued to Schmidt Trucking

> a policy or policies of insurance effective from 1/26/86 12:01 a.m. standard time at the address of the insured stated in said policy or policies and continuing *until canceled as provided herein* * * *.

This certificate and the endorsement described herein may not be canceled without cancellation of the policy to which it is attached. Such cancellation may be effected by the company or the insured giving thirty (30) days notice in writing to the State Commission, such thirty (30) days notice to commence to run from the date notice is actually received in the Office of the Commission.

(Emphasis added.)

On November 21, 1986, and December 22, 1986, Lynn Mueller of Sherman Agency, Inc., an agent of Great West, mailed renewal notices to Joseph Schmidt, the owner of Schmidt Trucking. There was no response to the renewal notices. Mueller then telephoned Schmidt on January 28, 1987, and left a message on his answering machine, informing him of the need to renew his insurance policy.

Joseph Schmidt stated in the trial court that prior to January 25, 1987, he contacted the Sherman Agency and indicated that he wanted continuing coverage but did not know when he could drop by their office. Schmidt stated he was told by Judy Daninger of the Sherman Agency that she would take care of it and put on a binder until Schmidt was able to get to the office. Schmidt's affidavit submitted to the trial court contained a typographical error, indicating Schmidt received notice of the impending expiration of his policy in December of *1985* and spoke with Daninger in January of *1986.* Counsel have stipulated that Schmidt intended to say that he was informed of the upcoming expiration of his insurance policy in December of 1986 and spoke with Daninger in January of 1987. Counsel for Great West has moved for leave to supplement the record with an affidavit from Judy Daninger, disputing Schmidt's assertions. By order dated October 12, 1989, decision on the motion was deferred to this panel.

After the Strenges brought their personal injury action against Schmidt Trucking, Great West moved for a declaratory judgment determining that it had no obligation to defend or indemnify Schmidt Trucking.

This motion was denied, and Great West has appealed.

## ISSUE

Did the trial court err in granting summary judgment?

## ANALYSIS

On appeal from a summary judgment, it is the function of this court to determine whether there are any genuine issues of material fact and whether the trial court correctly applied the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). This court need not give deference to the trial court's decision on an issue of law. *Frost–Benco Electric Association v. Minnesota Public Utilities Commission*, 358 N.W.2d 639, 642 (Minn. 1984).

Respondent argues that the trial court correctly determined that its insurance policy could not be canceled without the 30 days notice required by Minn.Stat. § 221.141. Great West does not disagree with this; however, Great West contends the policy was not canceled, but simply lapsed, and argues that the difference between cancellation and lapse is pertinent to the controlling statute.

Cancellation of an insurance policy occurs when coverage is terminated during the policy period or term. *Carson v. Dickerson*, 512 So.2d 1188 (La.Ct.App.1987). An insurance policy lapse occurs when the insured does not pay the renewal premium. *Hunter v. West American Insurance Co.*, 95 Ill.App.3d 108, 50 Ill.Dec. 611, 419 N.E.2d 719 (1981).

In construing an insurance policy, the function of a court is to determine what the agreement of the parties was and to enforce it. *Fillmore v. Iowa National Mutual Insurance Co.*, 344 N.W.2d 875, 877 (Minn.Ct.App.1984). The language used in the policy must be given its ordinary and usual meaning so as to give effect to the intention of the parties as it appears from the contract. *Dairyland Insurance Co. v. Implement Dealers Insurance Co.*, 294 Minn. 236, 244–45, 199 N.W.2d 806, 811 (1972). To determine what the parties intended, a court may consider documents in addition to the insurance policy. *See National Union Fire Insurance v. Schwing America, Inc.*, 446 N.W.2d 410 (Minn.Ct. App.1989). Respondent argues that the Form E Certificate of Insurance filed with the Department of Transportation and executed by Great West requires Great West to provide continuing insurance for Schmidt Trucking until the policy was canceled pursuant to the statutory requirements for cancellation. The Form E in this case stated that Great West provided coverage for Schmidt Trucking from January 25, 1986, "continuing until canceled."

Great West contends that it would be absurd and unreasonable to require notice of cancellation when a policy expires by its own terms. This interpretation would require Great West to give notice of cancellation to its insureds who are in good standing or face the possibility of extending the policy period for an additional 30 days, for which a premium may or may not be collectible.

We appreciate Great West's argument as we find the same anomaly in the statute that it does. With no apparent justification, the literal interpretation of the statute requires an insurer to supply 13 months of insurance in return for a 12–month premium! At the end of the 12–month policy period, if the insured gives the insurer an honest notice that he does not choose to renew, (for instance, they are going out of business, have found a better rate, et cetera), the insurer is still required to send a formal notice of cancellation (even though now obviously moot) and must keep the policy in effect for another 30 days pursuant to the terms of the statute. The insurer is required to extend the coverage even when the insured makes it clear he does not intend to renew, and has no intention of paying another month's premium.

Great West argues with compelling logic that the insurers are put in an untenable position if they want to avoid having to give away one free month's worth of insurance. To avoid such a give away, insurers would have to indulge in the questionable practice of giving every insured trucker, including those in good standing with a policy paid in full, a formal notice of cancellation 30 days prior to the expiration of the

**156**

policy period. Unless the statute is changed, insurers may have to charge a 13 month premium in advance, give notice of cancellation after 12 months, and either continue coverage for the 30 days required by statute, or if the trucker has changed insurers and filed the requisite notice with the state, then refund the unused month's premium. This is cumbersome and would lead to more paper work, but would avoid the result of the present statute, which we are required to apply, that forces the insurer of a trucker to give 13 months coverage for the price of 12 months. However, the language of the statute is clear.

The statute in effect at the time the policy in question was issued provided for cancellation for nonpayment of premiums upon at least 30 days written notice to the insured and the Commissioner. While "cancellation" ordinarily refers to termination of coverage during the policy period, here it means you have to formally "cancel" even when the policy has run its normal 12 month course and both the insurer and the insured understand that the insured does not wish to renew.

Form E, promulgated pursuant to Minn. Stat. § 221.141, subd. 1, specifies that the insurance policy continues until canceled. Great West executed Form E, verifying that its policy continued until canceled. Under these circumstances, the policy could not simply lapse; it would have to be canceled.

Because we conclude that the trial court correctly granted summary judgment on the coverage question, we do not reach other issues raised by the parties.

### DECISION
Minn.Stat. § 221.141, subd. 1 and Minn.R. 7805.2000 require 30 days notice before the policy at issue can be canceled. That notice was not given, and the trial court properly granted summary judgment on the coverage question.

Affirmed.