These appeals arise out of the refusal by American Security Insurance Company ("American") to defend an action and pay a claim filed by its insured, Reba Aplin, after she was involved in an automobile accident. Following that refusal, Aplin filed a two-count complaint seeking a declaration of her rights under her insurance policy, and asserting a claim of bad faith failure to pay a claim.[1] The trial judge entered a summary judgment in favor of Aplin on the first count, ordering American to defend Aplin and pay damages within the policy limits, and entered a summary judgment in favor of American on the bad faith claim.
Aplin appeals from the summary judgment on the bad faith claim, and American cross-appeals from the summary judgment on the claim for declaratory relief. Because proof of the existence of an insurance contract between the parties is a threshold requirement in a bad faith claim, Tyson v. SafecoIns. Co., 461 So.2d 1308, 1311 (Ala. 1984), this Court will address American's cross-appeal first.
Aplin's driver's license was suspended in 1983. In order to have her license reinstated, *Page 759 
she obtained a collision and liability automobile insurance policy from American. In accordance with the provisions of the Motor Vehicle Safety-Responsibility Act ("Act"), Ala. Code 1975, §§ 32-7-1 et seq., a "Form SR-22," or financial responsibility insurance certificate, that named American as Aplin's insurer, was filed with the Department of Public Safety. That form, which was signed by an authorized American representative, contained the following provision:
 "This certification is effective from 06-01-84 and continues until cancelled or terminated in accordance with the financial responsibility laws of this State."
There is no dispute that the policy referred to in that form remained in force until December 1, 1987.
On October 29, 1987, American sent Aplin a notice that her policy would expire on December 1, 1987, unless renewed before that date. Aplin did not renew her policy before December 1, 1987, and denied receiving that notice. On December 18, 1987, Aplin was involved in the automobile accident that gave rise to this dispute. On that date, Aplin paid American's agent her renewal premium and later notified that agent that she had been involved in an accident. American's agent stated that she told Aplin that her policy had lapsed and that any coverage that might be provided by the late premium would be prospective only. Aplin denied being told that. American negotiated Aplin's check, and an adjuster examined the cars involved in Aplin's accident. However, on January 15, 1988, American notified Aplin that her coverage did not begin until December 19, 1987, and refused to pay her claim or defend her in an action filed by the driver of the other automobile in the accident.
Aplin then filed this action against American. The trial judge held that American's failure to file a notice of cancellation with the director of the Department of Public Safety, as required by Ala. Code 1975, § 32-7-24, rendered its attempt to terminate Aplin's policy ineffective. However, the trial judge found that no issue of material fact existed as to Aplin's bad faith claim and that on that claim American was entitled to a judgment as a matter of law.
Section 32-7-24 requires an insurer to file a notice of its intent to cancel or terminate a compulsory liability insurance policy:
 "When an insurance carrier has certified a motor vehicle liability policy under section 32-7-20 or a policy under section 32-7-21, the insurance so certified shall not be cancelled or terminated until at least 10 days after a notice of cancellation or termination of the insurance so certified shall be filed in the office of the director; except, that such a policy subsequently procured and certified shall, on the effective date of its certification, terminate the insurance previously certified with respect to any motor vehicle designated in both certificates." (Emphasis added.)
This requirement, as well as the other requirements set out in the Act, are binding on all insurers who issue compulsory automobile liability insurance policies:
 "The certificate here involved is a certificate of future insurance given to induce the restoration of a revoked driver's license, an SR-22. The Alabama Motor Vehicle Financial Responsibility Act [predecessor to the current Act], and the extent of the liability which it imposes, is as much a part of the policy as if it were written into it. . . ."
American Southern Ins. Co. v. Dime Taxi Service, Inc., 275 Ala. 51,56, 151 So.2d 783, 786 (1963). See also, Annot., 44 A.L.R. 4th 13 (1986).
American concedes that it failed to comply with § 32-7-24. However, it argues that its obligation to file a notice with the director of the Department of Public Safety expired three years after the insurance policy was issued, a date preceding its attempted cancellation of Aplin's policy. That argument is based on language contained in § 32-7-31, reproduced, in pertinent part, below:
 "(a) The director shall upon request consent to the immediate cancellation of any bond or certificate of insurance, or the director shall direct and the state treasurer shall return to the person entitled *Page 760 
thereto any money or securities deposited pursuant to this chapter as proof of financial responsibility, or the director shall waive the requirement of filing proof, in any of the following events:
 "(1) At any time after three years from the date such proof was required when, during the three-year period preceding the request, the director has not received record of a conviction or a forfeiture of bail which would require or permit the suspension or revocation of the license, registration or nonresident's operating privilege of the person by or for whom such proof was furnished."
(Emphasis added.)
American does not contend that it requested the director to cancel the certificate of insurance it issued on Aplin's behalf. Due to American's failure to comply with either §32-7-24 or § 32-7-31, Aplin's policy remained in effect through the date of her accident by operation of law, and the trial court correctly granted her motion for summary judgment as to the first count of her complaint.
In order to present a prima facie case of bad faith refusal to pay an insurance claim, the insured must prove: (1) the existence of an insurance contract between the parties, and a breach thereof by the insurer; (2) an intentional refusal to pay the insured's claim; (3) the absence of any reasonably legitimate or arguable reason for refusal; (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason; and (5) if the intentional failure to determine the existence of a lawful basis is relied upon, the insured must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim. National Security Fire Casualty Co. v. Bowen,417 So.2d 179, 183 (Ala. 1982).
In the instant case, it cannot be said that American's reasons for refusing to pay Aplin's claim had no debatable legal or factual basis. An insurer is not liable in a bad faith action simply because it has exercised poor judgment or has been negligent. An action alleging bad faith must be supported by evidence showing that the insurer had no reasonably arguable ground for disputing the insured's claim or that it acted with an intent to injure. Blue Cross-Blue Shield of Alabama, Inc. v.Granger, 461 So.2d 1320, 1325-26 (Ala. 1984). Such is not the case here. Although its decision was not correct, American had debatable reasons for denying Aplin's claim, most notably her failure to renew the policy in a timely manner. Therefore, the summary judgment on the bad faith claim was proper.
The trial court's ruling on each of the two counts in Aplin's complaint was correct, and the summary judgments are affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.
[1] Aplin died after filing her complaint against American, from causes unrelated to this action. Her husband, as the administrator of her estate, was substituted as the plaintiff. Both will be referred to as "Aplin."