JULIAN DANIELS, APPELLANT, V. ALLSTATE INDEMNITY COMPANY, AN ILLINOIS CORPORATION, APPELLEE.

624 N.W. 2d 636

Filed April 20, 2001.   No. S-00-051.

Gary F. Smolen for appellant.

Waldine H. Olson and Amy Sherman Geren, of Nolan, Roach, Olson, Fieber & Lautenbaugh, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.
FACTUAL AND PROCEDURAL BACKGROUND

Julian Daniels, the appellant, obtained an automobile liability insurance policy from Allstate Indemnity Company (Allstate) in January 1997. Daniels was required to keep a proof of financial responsibility on file with the Department of Motor Vehicles (DMV) pursuant to Neb. Rev. Stat. § 60-524 (Reissue 1998). On or about July 10, 1998, Daniels received a bill for his insurance premium. The bill stated that a minimum payment of $107.75 was due on July 31 and that another payment of $102.77 would

be due on August 31. The bill stated that Daniels' coverage would not continue unless Allstate received the minimum amount due before July 31.

Daniels did not make the required payment prior to July 31, 1998. Instead, Daniels went to an Allstate office in Omaha on August 13 to pay his bill in cash. Allstate's records indicate that Daniels made a payment of $110. Daniels averred in an affidavit that he discussed his coverage with the "only female employee" in the office, asked if the payment was sufficient to keep his coverage in effect, and was told that it was. This employee was apparently a secretary.

Daniels received a cancellation notice from Allstate via certified mail on August 15, 1998, stating that Daniels' policy would be canceled on August 31 if the minimum amount due of $205.52 was not received before that date. The notice was sent on August 11, prior to Daniels' visit to the Allstate office. Daniels' affidavit states that he acted under the assumption that the notice was out of date and that the representations of the Allstate employee were valid regarding Daniels' continuing insurance coverage.

Donald McKamy, the Allstate agent responsible for Daniels' account, averred that the August 13, 1998, payment was Daniels' past-due payment for July and that he did not make any representations that Daniels' August 13 payment would keep Daniels' policy in effect. Lee Wulf, an evaluation consultant for Allstate, claimed in a letter to Daniels' attorney that a "special notice" was sent of the remaining deficiency after Daniels' August 13 payment. Daniels denies receiving such a notice, and such a notice is not in the record.

Daniels was involved in an automobile accident on September 9, 1998. Daniels averred that on September 10, he again contacted Allstate to ask if his policy was in force, and the same female employee he had spoken to before told him that his policy was in force but that another $101 needed to be paid. Daniels made that payment on September 11 and averred that he was assured there had been no lapse in coverage.

On September 17, 1998, Allstate sent a letter to Daniels informing him that it was denying liability for the September 9 accident due to cancellation of the policy effective August 31.

The record does not contain any indication that Allstate at any time informed the DMV that Daniels' policy had been canceled.

Daniels filed a petition in the district court seeking a declaratory judgment that his insurance policy was in full force and effect on September 9, 1998. Allstate counterclaimed for a declaration that the policy was not in force on September 9 and that Allstate had no contractual obligation to indemnify or defend Daniels as a result of the September 9 accident. Allstate moved for summary judgment; Daniels did not file a cross-motion for summary judgment. The district court granted Allstate's motion for summary judgment, finding that Daniels failed to make required premium payments and did not have insurance coverage with Allstate at the time of the accident. Daniels appeals from the district court's judgment in favor of Allstate.

## ASSIGNMENTS OF ERROR

Daniels assigns, consolidated and restated, that the district court erred in entering summary judgment despite sufficient evidence that Allstate (1) orally waived the cancellation provisions of the written insurance contract and written notice of cancellation and (2) failed to comply with the notice requirements of Neb. Rev. Stat. § 60-544 (Reissue 1998).

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Allstate Ins. Co. v. LaRandeau, ante* p. 242, 622 N.W.2d 646 (2001). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Bates v. Design of the Times, Inc., ante* p. 332, 622 N.W.2d 684 (2001).

Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by

the court below. *Tilt-Up Concrete v. Star City/Federal, ante* p. 64, 621 N.W.2d 502 (2001).

## ANALYSIS

### ORAL WAIVER OF CANCELLATION

Daniels argues first that Allstate was not entitled to summary judgment because the evidence, taken in the light most favorable to him, would support the conclusion that Allstate waived its right to cancel his insurance policy for the nonpayment of premiums. Specifically, Daniels claims that Allstate is estopped by the actions of its employee on August 13, 1998, when Daniels claims he was assured that his payment of $110 would keep his policy in effect. Daniels also claims Allstate is estopped because of the payment it accepted on September 11, which Daniels argues was made on the assurance that Daniels' insurance coverage had not lapsed.

A waiver is a voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct. *Fritsch v. Hilton Land & Cattle Co.*, 245 Neb. 469, 513 N.W.2d 534 (1994). See, also, *Lowry v. State Farm Mut. Auto. Ins. Co.*, 228 Neb. 171, 421 N.W.2d 775 (1988). Ordinarily, to establish a waiver of a legal right, there must be a clear, unequivocal, and decisive act of a party showing such a purpose, or acts amounting to an estoppel on his or her part. *Schoemaker v. Metropolitan Utilities Dist.*, 245 Neb. 967, 515 N.W.2d 675 (1994); *Fritsch v. Hilton Land & Cattle Co., supra.*

It is long established that an insurance company may waive the cancellation provisions of an insurance policy. For instance, in *Schoneman v. Insurance Co.*, 16 Neb. 404, 406, 20 N.W. 284, 285 (1884), this court stated:

> That an insurance company may waive any provision in a policy intended for its benefit is too well established to require the citation of authorities.
>
> In other words, where there has been a breach in the conditions of a policy, the company may, if it see fit, take advantage of such breach and cancel the policy. It need not do so, however, but may waive the forfeiture, and this may be done by acts as well as words.

■ The rule is that some act of conduct amounting to a recognition of the continued validity of a policy as a binding obligation upon the insurer is necessary to constitute an effective waiver of policy provision for forfeiture for nonpayment of premiums. *Bohannon v. Guardsman Life Ins. Co.*, 224 Neb. 701, 400 N.W.2d 856 (1987); *Tighe v. Security Nat. Life Ins. Co.*, 191 Neb. 271, 214 N.W.2d 622 (1974). Thus, where a notice of cancellation emanates from the insured's failure to promptly pay premium indebtedness, but the agent subsequently assures the insured that the policy will not be canceled if the delinquent premium is paid within a specified time, the insurer is estopped from insisting upon cancellation where the insured relies on the assurances to his or her detriment. See 2 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 31:112 (3d ed. 1997).

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Bates v. Design of the Times, Inc., ante* p. 332, 622 N.W.2d 684 (2001). In the instant case, the evidence, taken in the light most favorable to Daniels, would support the findings that Daniels was induced, by the representations of an Allstate employee, to believe that his insurance coverage remained in effect without lapsing; that Daniels relied on such representations to his detriment because he did not fully pay his premium indebtedness prior to the accident; and that he made such payment after the accident after being assured that his insurance coverage had not lapsed.

Allstate argues that Daniels' averments are not credible, because Allstate claims that Daniels made inconsistent statements to its adjuster and because Daniels should not have relied on any statements made by Allstate employees on August 13, 1998, when a contrary written notice was received on August 15. Daniels argues that Daniels' statements are consistent and that he disregarded the written notice because it was prepared and mailed prior to the payment he made on August 13. Allstate's arguments attack only Daniels' credibility and do not demonstrate the absence of a genuine issue of material fact; rather, they illustrate the factual question that remains to be decided by a trier of fact.

■ If a genuine issue of fact exists, summary judgment may not properly be entered. *City State Bank v. Holstine,* 260 Neb. 578, 618 N.W.2d 704 (2000). We determine that when the evidence is viewed in the light most favorable to Daniels, there exists a genuine issue of material fact as to whether Allstate waived its right to cancel Daniels' insurance policy for nonpayment of premiums. The judgment of the district court must be reversed, and the cause remanded for further proceedings.

## FAILURE TO NOTIFY DMV

■ Given our resolution of Daniels' first assignment of error, it is not essential that we reach the remaining issue in this appeal. However, an appellate court may, at its discretion, discuss issues unnecessary to the disposition of an appeal where those issues are likely to recur during further proceedings. *Gestring v. Mary Lanning Memorial Hosp.,* 259 Neb. 905, 613 N.W.2d 440 (2000); *Snyder v. Contemporary Obstetrics & Gyn.,* 258 Neb. 643, 605 N.W.2d 782 (2000). Because notice to the DMV is likely to recur after remand, we take this opportunity to address the issue.

Nebraska's Motor Vehicle Safety Responsibility Act, Neb. Rev. Stat. ch. 60, art. 5 (Reissue 1998 & Cum. Supp. 2000), requires that persons whose motor vehicle operators' licenses have been suspended or revoked are required, in order to hold a license or register a vehicle, to maintain proof of financial responsibility. See §§ 60-524 and 60-525. A person can maintain such proof by filing, with the DMV, a written certificate from an insurance carrier that there is a motor vehicle liability policy in effect for the benefit of the person required to provide proof of financial responsibility. See § 60-529. Daniels' affidavit indicates that he was required to maintain proof of financial responsibility pursuant to § 60-524.

Daniels' argument is based upon § 60-544, which provided:

When an insurance carrier has certified a motor vehicle liability policy under sections 60-529 to 60-531, the insurance so certified shall not be canceled or terminated until at least ten days after a notice of cancellation or termination of the insurance so certified shall be filed in the office of the department, except that such a policy subsequently pro-

cured and certified shall, on the effective date of its certification, terminate the insurance previously certified with respect to any motor vehicle designated in both certificates.

We note, for the sake of completeness, that § 60-544 has subsequently been amended to provide that cancellation or termination is effective 10 days after the notice of cancellation or termination is sent to the insured, rather than 10 days after the notice is filed in the office of the DMV. See § 60-544 (Cum. Supp. 2000). However, Allstate concedes that the prior version of § 60-544, as quoted above, was in effect and is controlling in the instant case. See *Bowers v. Dougherty*, 260 Neb. 74, 615 N.W.2d 449 (2000) (statutes covering substantive matters in effect at time of transaction govern).

The plain language of § 60-544 states that a motor vehicle liability policy certified under § 60-529 shall not be canceled or terminated until at least 10 days after a notice of cancellation or termination is filed with the DMV. We have not previously considered the effect of this statute, nor are we likely to consider its effect in the future given the amendment to § 60-544 in 1999. However, the general rule is that where statutory provisions require notice to a government agency in order to effect cancellation of a policy, such notice must be given to effect a cancellation, and conversely, there is no cancellation where notice is given merely in accordance with the provisions of the policy. 2 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 31:19 (3d ed. 1997). See, also, e.g, *American Cas. Reading Pa. v. Nordic Leasing, Inc.*, 42 F.3d 725 (2d Cir. 1994) (applying Vermont law); *Aplin v. American Sec. Ins. Co.*, 568 So. 2d 757 (Ala. 1990); *Transamerica Ins. Co. v. Tab Transp., Inc.*, 12 Cal. 4th 389, 906 P.2d 1341, 48 Cal. Rptr. 2d 159 (1995); *Georgia Farm Bureau Mutual Insurance Company v. Phillips*, 251 Ga. 244, 304 S.E.2d 725 (1983); *Govern. Emp. Ins. v. Concord Gen. Mut. Ins.*, 458 A.2d 1205 (Me. 1983); *Great West Cas. Co. v. Christenson*, 450 N.W.2d 153 (Minn. App. 1990); *Liberty Mut. Ins. Co. v. Bethel*, 207 A.D.2d 449, 615 N.Y.S.2d 462 (1994); *Brisker v. Ibrahim*, 29 Ohio App. 3d 16, 502 N.E.2d 679 (1985); *Vrabel v. Scholler*, 372 Pa. 578, 94 A.2d 748 (1953); *U. S. F. and G. Co. v. Security F. and I. Co.*, 248 S.C. 307, 149 S.E.2d 647 (1966); *Lang v. Kurtz*, 100 Wis. 2d 40, 301 N.W.2d 262 (Wis. App. 1980).

The purpose of such a statute is to protect the public by allowing the DMV to prevent operation of a motor vehicle by the insured without providing proof of continued financial responsibility. See, *American Cas. Reading Pa. v. Nordic Leasing, Inc., supra*; *Lang v. Kurtz, supra*; *U. S. F. and G. Co. v. Security F. and I. Co., supra*. The prior version of § 60-544 effectuated this purpose by requiring insurers to notify the DMV prior to the cancellation or termination of liability coverage and by continuing coverage until appropriate notice was given.

The plain language of the relevant version of § 60-544 clearly provided that a cancellation or termination of liability insurance certified under § 60-529 was not effective until at least 10 days after a notice of cancellation or termination was filed with the DMV. It is not within the province of the courts to read a meaning into a statute that is not there or to read anything direct and plain out of a statute. *Nelson v. City of Omaha*, 256 Neb. 303, 589 N.W.2d 522 (1999). In this case of last impression, Daniels presented evidence supporting the reasonable inference that his Allstate policy was certified with the DMV, thus requiring Allstate to give notice to the DMV pursuant to § 60-544 prior to termination or cancellation of the policy. Allstate presented no evidence of compliance with the version of § 60-544 in effect in 1998.

Allstate argues that Daniels could have used discovery procedures to obtain and present such evidence. However, it was Allstate's burden, not Daniels', to present evidence of compliance with § 60-544. The party moving for summary judgment has the burden to show that no genuine issue of material fact exists and must produce sufficient evidence to demonstrate that the moving party is entitled to judgment as a matter of law. *Morrison Enters. v. Aetna Cas. & Surety Co.*, 260 Neb. 634, 619 N.W.2d 432 (2000). Moreover, the burden of establishing an effective cancellation before a loss is on the insurer. See *Baker v. St. Paul Fire & Marine Ins. Co.*, 240 Neb. 14, 480 N.W.2d 192 (1992). Once the notice requirements of § 60-544 were implicated, it was Allstate's burden to demonstrate compliance with § 60-544 in order to show that it was entitled to judgment as a matter of law. Absent such evidence, the district court erred in granting Allstate's motion for summary judgment.

## CONCLUSION

Daniels presented evidence showing a genuine issue of material fact regarding a waiver by Allstate of the cancellation of Daniels' insurance policy, and Allstate failed to present evidence that it complied with the statutorily required notice to the DMV prior to cancellation of Daniels' insurance policy. The district court erred in granting Allstate's motion for summary judgment. The judgment of the district court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.