IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

SWJKM v. GENERAL CAS. INS. CO.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

SWJKM, LLC, DOING BUSINESS AS TOTAL LOGISTICS,
APPELLANT AND CROSS-APPELLEE,
V.
GENERAL CASUALTY INSURANCE COMPANY, APPELLEE,
AND REGENT INSURANCE COMPANY,
APPELLEE AND CROSS-APPELLANT.

Filed June 17, 2014.    No. A-13-447.

Appeal from the District Court for Douglas County: JOSEPH S. TROIA, Judge. Affirmed.

Robert M. Slovek and Amy L. Van Horne, of Kutak Rock, L.L.P., for appellant.

John C. Brownrigg and Heather B. Veik, of Erickson & Sederstrom, P.C., L.L.O., for appellee Regent Insurance Company.

MOORE, PIRTLE, and RIEDMANN, Judges.

MOORE, Judge.

SWJKM, LLC, doing business as Total Logistics (TLS), sustained damage to its warehouse after water seeped through a cracked drain pan, froze underneath the floor, and expanded, causing damage to the concrete floor. TLS submitted a claim to Regent Insurance Company (Regent), under a comprehensive insurance policy, which Regent denied. TLS then filed a declaratory action in the district court for Douglas County. Both parties moved for summary judgment, and the district court granted Regent's motion. In its order, the district court found the water exclusion in the policy precluded coverage for TLS' claim. TLS appealed and Regent cross-appealed from that order. For the reasons that follow, we affirm the decision of the district court.

FACTUAL BACKGROUND

TLS is a company that provides warehousing services to a wide variety of companies. These services include storage of materials in specially designed freezers. On August 2, 2011, John Paul McCardle, the president of TLS, noticed a large portion of the warehouse's concrete floor had begun to heave and buckle. When the heaving grew more extensive, McCardle began to investigate. TLS hired a contractor to remove a section of the concrete floor to determine the cause.

After the first section of the floor was removed, TLS discovered ice was heaving up through the concrete. Eventually, TLS concluded the ice was the result of water that escaped through a cracked drain pan and froze underneath the warehouse floor. The heaving was caused by the weight and pressure of the ice causing expansion under the floor. The ice was not due to naturally occurring water under the ground, but formed from water from the faulty drain pan under the concrete. Three sections of concrete floor, totaling approximately 2,400 square feet, had to be replaced. These replacements were made in three stages, and all replacements were completed by December 11, 2011.

During the time in question, TLS was insured under a comprehensive insurance policy issued by Regent, under the umbrella of General Casualty Insurance Company. On or about October 4, 2011, McCardle, on behalf of TLS, notified Regent to file a claim against the policy. McCardle spoke with Debbie Lampman of Regent about the claim and allegedly received her approval to commence repairs following a discussion of the extent and cause of damages. McCardle also requested Lampman send a representative to advise on how the repairs should be handled. According to McCardle, Lampman insisted that TLS was "doing fine" and that it should continue to document its repair process.

Later, when McCardle informed Lampman that the total cost of the repairs was going to exceed $20,000, Regent sent an adjuster to assess the situation. According to McCardle, the adjuster told him that he believed the damages were covered under the policy, but the adjuster also stated that he did not make that decision. TLS incurred repair costs that totaled $159,276.27, and also claimed to have suffered damages related to lost revenue and lost production for its managerial personnel. McCardle maintained that if TLS had not commenced prompt repairs, damages to customer products stored in the freezer would have been several million dollars.

McCardle testified during his deposition that in proceeding with the repairs, TLS did not do anything differently than it would have done if TLS had not been given approval by Lampman to proceed with the repairs. McCardle testified that he did what he felt was necessary to restore the operation of the TLS facility as quickly as possible and that TLS would have made the repairs regardless of what McCardle was told by Regent's representatives. He also acknowledged TLS did not spend any additional money on repairs based on Regent's authorization than it otherwise would have spent.

TLS made repeated demands upon Regent for coverage of the repair costs. Regent denied coverage, asserting that the claim was not covered under the policy. On September 4, 2012, TLS filed its operative complaint for declaratory judgment asserting that its claim should be afforded coverage under the policy. TLS also asserted that Regent should be estopped from denying coverage based on having given TLS prior verbal approval to proceed with repairs.

In its answer, Regent admitted that it had denied coverage, but maintained TLS' losses were not covered by the terms of the policy. Specifically, Regent asserted that TLS' losses were not covered for various reasons, including the applicability of several exclusions in the policy. These exclusions included "earth movement"; "settling, cracking, shrinking or expansion"; and "water" exclusions. Regent denied that TLS commenced repairs after obtaining verbal approval from Regent and that TLS detrimentally relied upon this approval. Regent also asserted that TLS' claim was barred from coverage because it did not provide prompt notice of its losses and made most of the repairs before allowing Regent the opportunity to inspect.

Both parties moved for summary judgment. On April 1, 2013, the district court entered an order granting Regent's motion for summary judgment and overruling TLS' motion. In its order, the court found that the "earth movement" and the "settling, cracking, sinking or expansion" exclusions did not apply to TLS' claim. However, the court concluded that the water exclusion did apply. The court found that water had escaped through a broken drain pan and turned to ice, causing the floor to heave. The court found no distinction between "water" and "ice" and determined that the exclusion applied because ice was an indirect result of leaking water.

On April 10, 2013, TLS filed a motion for new trial. TLS claimed that the water exclusion should not have applied because the damage was caused by the expansion of ice and not the movement of water. TLS also claimed that the district court should have applied waiver and estoppel because Regent approved the repairs without advising that a coverage determination was pending. The district court overruled this motion on May 10 without further comment. TLS appeals, and Regent cross-appeals.

ASSIGNMENTS OF ERROR

TLS assigns three errors, which we condense into two. TLS argues, restated, that the district court erred when it (1) found the water exclusion applied when the damage to the subject property was caused by the expansion of ice, and not the movement of water, and (2) failed to apply the doctrines of waiver and estoppel.

In its cross-appeal, Regent asserts that the district court erred when it found that the earth movement exclusion and the settling exclusion did not apply to TLS' loss.

STANDARD OF REVIEW

An insurance policy's interpretation presents a question of law that an appellate court decides independently of the trial court. See *American Fam. Mut. Ins. Co. v. Wheeler*, 287 Neb. 250, 842 N.W.2d 100 (2014). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the court granted the judgment and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id*.

ANALYSIS

*Applicability of Water Exclusion.*

The exclusion contained in the Regent insurance policy at issue states as follows:

(3) The Water Exclusion Endorsement of the policy, which replaced the Water Exclusion in the Commercial Property Coverage Part of the policy, provides that

[Regent] will not pay for loss or damage caused directly or indirectly by any of the following, and that such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

. . . .

B. Water

. . . .

3. Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

4. Water under the ground surface pressing on, or flowing or seeping through:

a. Foundations, walls, floors or paved surfaces;

b. Basements, whether paved or not; or

c. Doors, windows or other openings[.]

. . . .

This exclusion applies regardless of whether any of the above, in Paragraphs 1. through 5., is caused by an act of nature or is otherwise caused.

TLS argues that Regent should not be permitted to use the water exclusion to deny the claim because the damage was caused by the expansion of ice, not the movement of water. Highlighting other portions of the policy where ice and freezing are specifically referenced, TLS contends that the water exclusion applies only to water in liquid form. TLS asserts the trial court incorrectly relied on the language "'directly or indirectly'" when concluding the water exclusion applied in the present case. Brief for appellant at 11-12.

An insurance policy is a contract, and its terms provide the scope of the policy's coverage. *Peterson v. Homesite Indemnity Co.*, 287 Neb. 48, 840 N.W.2d 885 (2013). In construing an insurance contract, a court must give effect to the instrument as a whole and, if possible, to every part thereof. *Id.* An appellate court construes insurance contracts like any other contract, according to the meaning of the terms that the parties have used. See *American Fam. Mut. Ins. Co. v. Wheeler, supra*. When an insurance contract's terms are clear, an appellate court gives them their plain and ordinary meaning as a reasonable person in the insured's position would understand them. See *id*. But when an insurance contract is ambiguous, an appellate court will construe the policy in favor of the insured. See *id*.

There is nothing ambiguous about the water exclusion in TLS' policy, nor does TLS argue that it is ambiguous. TLS reasons that the water exclusion should apply only to water in liquid form. However, the language of the water exclusion does not so specify. Rather, the language in the water exclusion clearly excludes loss from damage caused directly or indirectly by water that backs up, overflows, or is otherwise discharged from a drain or related equipment, and water under the ground surface which presses on the floor. The undisputed facts in this case show that while the heaving of the concrete floor was caused by the weight and pressure of ice causing expansion under the floor, the ice was not formed from naturally occurring water under the ground but was formed from water from a faulty drain pan under the concrete. Clearly, the loss in this case originated with the leakage of water from the faulty drain pan. Thus, as found by the district court, the ice under the floor in this case was an indirect result of the water leaking from the drain pan.

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Peterson v. Homesite Indemnity Co., supra*. Because there is no genuine issue of material fact regarding the applicability of the water exclusion, we agree that as a matter of law, TLS' damages were not covered by the policy. This assigned error is without merit.

*Waiver and Estoppel.*

TLS asserts that Regent induced it to commence repairs without an inspection. TLS highlights the facts that Regent's representative allowed the repairs to proceed and instructed TLS to document the steps taken to repair the floor. During the time the repairs were being made, TLS argues that Regent did not advise TLS that it was asserting any policy exclusions. Therefore, TLS claims that Regent has waived the exclusions and should be estopped from denying coverage. The district court implicitly rejected this claim by virtue of the grant of summary judgment and denial of TLS' motion for new trial.

The Nebraska Supreme Court has noted that waiver and estoppel are distinct legal concepts. See *D & S Realty v. Markel Ins. Co.*, 280 Neb. 567, 789 N.W.2d 1 (2010). However, the elements of equitable estoppel are not strictly applied when an insured claims that an insurer has waived a policy provision. See *id*. Instead, if the evidence shows that the insurer has waived a policy provision, it may be estopped from denying liability where, by its course of dealing and the acts of its agent, it has induced the insured to pursue a course of action to his detriment. *Id*.

A waiver is a voluntary and intentional relinquishment of a known right, privilege, or claim, and may be demonstrated by or inferred from a person's conduct. *Daniels v. Allstate Indemnity Co.*, 261 Neb. 671, 624 N.W.2d 636 (2001). An insurer may waive any provision of a policy that is for the insurer's benefit. See *D & S Realty v. Markel Ins. Co., supra*. Ordinarily, to establish a waiver of a legal right, there must be a clear, unequivocal, and decisive act of a party showing such a purpose, or acts amounting to an estoppel on his or her part. *Id*. A party may prove the waiver by (1) a party's express declarations manifesting the intent not to claim an advantage or (2) a party's neglecting and failing to act so as to induce the belief that it intended to waive. *Id*.

Having reviewed the record, we reject TLS' arguments that Regent waived its right to assert policy exclusions and deny coverage. There is no evidence in the record that Regent ever affirmatively waived its right to assert policy exclusions. Further, TLS has not adduced evidence to show that Regent's representations induced it into making the repairs to its detriment. In fact, McCardle testified at his deposition that TLS did not spend any money on repairs that it would not have otherwise spent had Regent not authorized the repairs. McCardle also testified that he did what he felt was necessary to restore the facility as quickly as possible and would have done the same regardless of what Regent had represented to TLS. Based on this record, it is clear that Regent's representations did not induce any detrimental reliance from TLS. Because there is no genuine issue of material fact regarding this necessary element of waiver and estoppel, we find that the trial court did not err when it rejected TLS' arguments based on the doctrines of waiver and estoppel.

*Regent's Cross-Appeal.*

Having determined the district court did not err when entering summary judgment in favor of Regent based upon the water exclusion, we need not determine whether other exclusions also apply to preclude coverage of TLS' claim. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Pearson v. Archer-Daniels-Midland Milling Co.*, 285 Neb. 568, 828 N.W.2d 154 (2013).

## CONCLUSION

We affirm the district court's order granting summary judgment in favor of Regent.

AFFIRMED.