Joe R. LANG, Plaintiff-Appellant,

v.

Randall C. KURTZ, Defendant-Appellant,

MUTUAL SERVICE CASUALTY INSURANCE COMPANY, a
foreign corporation, Defendant-Respondent.

Court of Appeals

*No. 80–274. Submitted on briefs October 27, 1980.—
Decided December 19, 1980.*
(Also reported in 301 N.W.2d 262.)

For the plaintiff-appellant the cause was submitted on the briefs of *Thomas M. Croke* and the *Law Offices of Carl F. Schetter,* and *Carl F. Schetter,* of counsel, of Milwaukee.

For the defendant-respondent the cause was submitted on the brief of *James Samuelsen* and *Hayes and Hayes,* of Milwaukee.

Before Decker, C.J., Moser, P.J., and Cannon, J.

MOSER, P.J.    This is an appeal from a summary judgment in favor of Mutual Service Casualty Insurance Company (Mutual) dismissing the complaint of the plaintiff Joe R. Lang (Lang).

Mutual's wholly owned subsidiary, Modern Service Insurance Company (Modern), insured Randall C. Kurtz (Kurtz) under an automobile liability policy. Kurtz's policy was renewed at three-month intervals beginning

and ending as follows: April 11, 1977 through July 10, 1977; July 11, 1977 through October 7, 1977; and, October 7, 1977 through January 7, 1978. On December 13, 1977, Modern forwarded a notice to Kurtz that a premium was due by January 7, 1978, in the amount of $181, for the three-month coverage commencing January 7, 1978. That premium was not paid.

When Mutual, through Modern, initially extended coverage to Kurtz on April 11, 1977, it filed the required SR–22[1] with the Wisconsin Department of Transportation certifying liability coverage for Kurtz. Modern filed a subsequent renewal of the SR–22, effective July 11, 1977. Both certifications advised the department that the coverage was "effective from (date) and continuous until canceled or terminated in accordance with the financial responsibility laws and regulations of the state."[2]

Lang was injured in a car accident on April 23, 1978, when Kurtz, while driving the car in which Lang was a passenger, struck a utility pole. Lang sued Kurtz and Mutual for the damages he sustained as a result of Kurtz's alleged negligence. Although Mutual had not yet cancelled the SR–22 certification on file with the Department of Transportation[3] (and did not do so until

---

[1] SR–22 AAMVA Uniform Financial Responsibility Form. This form is filed by the insurer and satisfies the driver-insured's obligation under the financial responsibility law to furnish proof of financial responsibility for the future. *See* secs. 344.29, 344.30(1) and 344.31, Stats.

[2] In light of this language in the first SR–22, it was not necessary for Mutual to file the second SR–22.

[3] Sec. 344.34, Stats. (1977), requires notice of cancellation to the Department of Transportation and reads as follows:

Notice of cancellation or termination of certified policy. When an insurance carrier has certified a motor vehicle liability policy under s. 344.31 or a policy under s. 344.32, the insurance so certified shall not be canceled or terminated until at least 10 days after a notice of cancellation or termination of the insurance so certified has been filed in the office of the secretary. No insurance so

■

July 24, 1978), it denied insurance coverage because Kurtz had failed to pay the premium due on January 7, 1978. Both Lang and Mutual moved for summary judgment. Mutual argued that Kurtz's failure to pay the January 7, 1978, premium resulted in a lapse of the policy and not an affirmative act of "cancellation" of "termination" by Mutual which would give rise to the duty to notify pursuant to sec. 344.34, Stats. Lang argued that this construction defeated the purpose of the financial responsibility law. The trial court granted summary judgment to Mutual because no premium was paid by Kurtz for the period including the day of the injury, and because the legislature did not expressly provide for a sanction for the insurer's failure to notify under sec. 344.34. The trial court also denied Lang's motion for summary judgment.

On appeal, the only issue is whether the failure to comply with the notice of cancellation requirement of sec. 344.34, Stats., precludes Mutual from asserting that Kurtz's policy had lapsed because of his failure to pay the premium. We determine that the failure to notify does so preclude Mutual, and we therefore reverse.

■

Construction of a statute is an issue of law and can therefore be properly dealt with by summary judgment.[4]

---

certified may be canceled or terminated by the insurer prior to the expiration of 90 days from the effective date of the certificate on the grounds of failure to pay a premium when due. Such a policy subsequently procured and certified shall, on the effective date of its certification, terminate the insurance previously certified. Any certification or recertification filed by the same insurer following cancellation shall be accompanied by a fee of $3 payable by the insurance carrier.

(This section was amended to change the term "insurance carrier" to "insurer" by ch. 102, Laws of 1979).

[4] *Kenosha County Dept. of Social Services v. Nelsen,* 95 Wis.2d 409, 413–14, 290 N.W.2d 544, 547 (Ct. App. 1980).

However, this court is not required to give special deference to the trial court's determination on an issue of law.[5]

Lang claims that because he is a third-party beneficiary intended to be protected by the Financial Responsibility Act (Chapter 344, Stats.), Mutual should be estopped by its failure to comply with sec. 344.34[6] from claiming Kurtz's policy lapsed. Lang further argues that had Mutual properly notified the Department of Transportation Kurtz's operating privilege probably would have been revoked and Kurtz would not have been driving on April 23, 1978, or Kurtz would have obtained other coverage. Mutual argues that the nonpayment of the January 7, 1978, premium caused the policy to lapse without an affirmative act of cancellation or termination by Mutual. Thus, Mutual argues, the notice requirement of sec. 344.34 was not triggered. We agree with Lang that Mutual's position directly contravenes the purpose of the financial responsibility law and the specific language of sec. 344.34.

■

The purpose of the financial responsibility law is to provide a method of compensating a third party for damages that might result from future accidents involving an operator whose license has been previously revoked or suspended.[7] Proof of financial responsibility is required as a condition for reissuing a license previously revoked or suspended.[8] One way of providing the necessary proof of financial responsibility is through a written certification by an insurer indicating that the opera-

---

[5] *First Nat'l Leasing Corp. v. City of Madison,* 81 Wis.2d 205, 208, 260 N.W.2d 251, 253 (1977).

[6] Note 3 *supra.*

[7] *Laughnan v. Griffiths,* 271 Wis. 247, 256–57, 73 N.W.2d 587, 593 (1955) ; secs. 344.24 through 344.29, Stats.

[8] *Laughnan,* note 7 *supra.*

tor is insured.[9] It is in this context that the notice of cancellation of insurance provision should be interpreted.

Section 344.34, Stats., provides that insurance certified under sec. 344.31 "shall not be canceled or terminated until at least 10 days after a notice of cancellation or termination of the insurance so certified has been filed in the office of the secretary . . . ." Compliance with this notice requirement is essential to the effective operation of the financial responsibility law. Filing of the cancellation notice alerts the secretary of the Department of Transportation to the fact that an operator who was required to file proof of financial responsibility is no longer covered by insurance, so that the operator's license can be suspended or revoked until proof is again furnished.[10]

In light of this scheme, Mutual's claim that Kurtz's policy "lapsed" by the nonpayment of the premium and was not "cancelled" or "terminated" such that notice became necessary is a distinction without a difference. The notice provision is obviously designed to be triggered by the expiration of insurance coverage, regardless of the reason for the expiration.

By the terms of Mutual's policy,[11] failure to pay a premium is termed grounds for *cancellation* of the pol-

[9] Sec. 344.30, Stats.; sec. 344.31, Stats.

[10] *See* sec. 344.40, Stats.

[11] The record contains a copy of a Mutual insurance policy for Kurtz. On the cover is the following certification: "This is to certify that this is a true and actual copy of this policy as it existed on 04–23–78. (Signed) Dennis Mork, Modern Service Underwriter." A copy of this policy was attached to a Request for Admission in which Lang requested that Mutual admit that this was a copy of the policy issued to Kurtz. Mutual denied that this was a true and correct copy of Kurtz's policy. However, no explanation was given regarding the certification by the Modern

icy.[12] The term "lapse" is not used. Further, the same provision in Mutual's policy states that where the insured has failed to pay a premium, the policy "may be canceled by the company by mailing to such insured written notice stating when not less than ten days thereafter such cancellation shall be effective." Another policy provision states that, after the policy has been in effect for seventy days, it *would not* be cancelled for nonpayment of premium unless that ten-day notice was given.[13] This made the ten-day notice to the insured mandatory. The record indicates that Mutual did not send Kurtz a notice of cancellation before the accident date. Hence, by the terms of its own policy, it is estopped from asserting that there was no policy in effect.

The trial court seems to have attributed determinative significance to the fact that the legislature did not provide an express sanction in the statute for the failure to comply with its notice requirement. The trial court reasoned that had the legislature intended that the failure to notify would result in the policy remaining in effect, it should have so stated. Although we agree that such an explicit legislative statement would have been the best and clearest indication of legislative intent, we do not agree that the absence of such a statement precludes a construction of the statute to require that the policy remain in effect.

---

underwriter nor was a copy of Mutual's claimed "true" policy attached. In its decision from the bench, the court indicated that the policy in the record "was not renewed by the insurance carrier because of the failure of the defendant, Kurtz, to pay the premium . . . ." It appears then, that Mutual would agree that the policy in the record is the precise policy that would have been in force had the premium been paid. We determine, however, that the policy remained in effect, despite the nonpayment, until the appropriate notices were given to the insured as well as to the Department of Transportation.

[12] Paragraph 4, Amendatory Endorsement—Wisconsin.

[13] Paragraph 5(a), Amendatory Endorsement—Wisconsin.

Like the trial court, we are unwilling to cross the sometimes-thin line between permissible judicial construction and impermissible judicial legislation. However, in this case, the risk of violating that boundary is not as high as the trial court perceived. The statute provides: "The insurance so certified *shall not be canceled or terminated* until at least 10 days after a notice . . . has been filed in the office of the secretary." [Emphasis added.] [14] An insurance policy that is not cancelled or terminated remains in effect. This is a logical extension of the statutory language.

The trial court's construction of the statute would render the mandatory language ("shall not be canceled or terminated") meaningless and would convert the notice requirement into an optional procedure which insurers could disregard without risk. This could ultimately disrupt the functioning of the legislature's financial responsibility scheme. There would be no certainty that a certified operator is, in fact, insured.

Our construction of the statute does not place an unfair burden on certifying insurers. Because of the high risk involved in insuring previously revoked or suspended operators, insurers are able to obtain higher premiums. The fact that insurers must comply with the filing and notice requirements of state law is another factor they can take into consideration in setting premium rates and in making decisions to insure.

This court concludes that in light of all of these factors, the failure of an insurer to comply with the notice requirement set forth in sec. 344.34, Stats., precludes it from asserting that a previously certified policy lapsed and is no longer in effect. Accordingly, the summary

---

[14] Note 3 *supra.*

judgment dismissal of Mutual was improper. Summary judgment on the issue of coverage should have been rendered in favor of Lang.

*By the Court.*—Judgment reversed and cause remanded with directions to enter judgment on the issue of insurance coverage in favor of Lang.