Patricia S. MAGYAR, Individually and as Special Administrator of the Estate of Anthony F. Magyar, Deceased, Plaintiffs,

CITY OF MILWAUKEE, a municipal corporation, Involuntary-Plaintiff,

v.

WISCONSIN HEALTH CARE LIABILITY INSURANCE PLAN, a Wisconsin insurance corporation, Lawrence J. Frazin, M.D., Neurological Surgery, S.C., a Wisconsin service corporation, f/k/a Neurological Surgery of Milwaukee, S.C. and Wisconsin Patients Compensation Fund, Defendants,

NEUROLOGICAL SURGERY, S.C., Third-Party Plaintiff-Appellant-Petitioner,

v.

PHYSICIANS INSURANCE COMPANY OF WISCONSIN, Third-Party Defendant-Respondent,

WISCONSIN PATIENTS COMPENSATION FUND, Defendant.

Supreme Court

*No. 98–3289. Oral argument February 5, 2001.—Decided May 3, 2001.*

2001 WI 41

(Also reported in 625 N.W.2d 291.)

494

For the third-party plaintiff-appellant-petitioner there were briefs by *David W. Neeb, Daniel J. Borowski* and *Davis & Kuelthau, S.C.*, Milwaukee, and oral argument by *James E. Culhane*.

For the third-party defendant-respondent there was a brief by *Jeffrey O. Davis, Cory L. Nettles* and *Quarles & Brady, LLP*, Milwaukee, and oral argument by *Jeffrey O. Davis* and *Owen T. Armstrong, Jr.*

¶ 1. WILLIAM A. BABLITCH, J. Neurological Surgery, S.C. (NSM) petitions us to review a court of appeals' decision that held that Physicians Insurance Company of Wisconsin (PICW) had no duty to defend or indemnify NSM against allegations of negligence because NSM's policy was not in effect at the time of

the negligence claim against NSM due to PICW's non-renewal of the policy. NSM argues that PICW's failure to give notice of nonrenewal to either NSM or the commissioner of insurance had the result of maintaining the insurance policy until such notices were given. We disagree. If NSM were correct, the statute requiring notice would in effect provide unlimited renewals until notice was given. The statute does not so provide. Accordingly, we affirm.

## I

¶ 2. Patricia Magyar filed a lawsuit on October 22, 1992, following the death of her husband, Anthony Magyar. In her complaint, she alleged that her husband's death was caused by the medical negligence of Lawrence Frazin during care that he provided in 1990. Anthony Magyar died in December 1990. The complaint named Frazin, his insurer (Wisconsin Health Care Liability Insurance Plan), and the Wisconsin Patients Compensation Fund as defendants. At the time of the alleged negligence, Frazin was one of two physicians at NSM. In March 1993, Magyar amended her complaint to add NSM as a defendant. In October 1994, NSM filed a third-party complaint against PICW after PICW denied any obligation to defend or indemnify NSM.

¶ 3. Our review focuses on NSM's insurance policy with PICW; thus, some background regarding this policy is necessary. In April 1987, Frazin and Richard Strassburger, the other physician at NSM, obtained individual medical professional liability claims-made insurance policies with PICW. At that time, NSM received an identical policy with equal coverage at no additional cost. The policy included the following stipulation: "[Y]our entity is not covered unless all

physicians and surgeons who are members of your entity are covered by individual policies of insurance issued by us." The terms of eligibility in the policy stated: "A partnership, association or corporation is eligible for coverage only if all physicians and surgeon members, partners, officers, directors or shareholders of the partnership, association or corporation: 1. Are insured by professional liability policies issued by us. 2. Maintain the same limits of liability."

¶ 4. In April 1988, PICW renewed the policies to NSM and to NSM's physicians individually. The policies were all renewed for a term of nine months, ending January 1, 1989. In November 1988, PICW informed Frazin that, effective January 1, 1989, it would not be renewing his policy. PICW did not send any notice of nonrenewal to NSM. Frazin purchased a reporting endorsement through PICW, which provided "tail coverage" to him, that is, coverage for any incident occurring during the policy period but not reported until a date within the endorsement period. This endorsement took effect on January 1, 1989.

¶ 5. In January 1993, the Wisconsin Patients Compensation Fund notified NSM that NSM did not have a valid certificate of insurance on file. NSM then contacted PICW, and PICW explained that a certificate was not on file because NSM's policy had been terminated on January 1, 1989. After being named as a defendant in this lawsuit, NSM tendered a defense to PICW in January 1994. PICW denied any obligation to defend or indemnify NSM under the policy. Consequently, NSM filed a third-party complaint against PICW. In it, NSM argued that because PICW failed to give notice of termination of coverage to NSM and to the commissioner of insurance, PICW's nonrenewal of the policy was void, and PICW had a duty to defend and

indemnify NSM in this case. The parties later brought cross-motions for summary judgment.

¶ 6. The Milwaukee County Circuit Court, the Honorable Victor Manian, granted summary judgment in favor of PICW. The court concluded that PICW failed to provide notice of nonrenewal to NSM pursuant to Wis. Stat. § 631.36(4)(a)(1987–88),[1] and as a result, NSM was entitled to a renewal of its policy. However, the court found that this renewal was limited to one additional period under the same conditions and for the same term as the policy. Because the malpractice act and claim both occurred after any renewal period, the court determined that PICW was not obligated to defend or indemnify NSM in this case. The court also concluded that NSM was not entitled to coverage after January 1, 1989, because after that date NSM failed to have all of its physicians covered by PICW policies with equal liability limits. The court noted that this condition precedent was necessary for NSM to have coverage under the policy.

¶ 7. The court of appeals affirmed, and we accepted review.

## II

¶ 8. We review the circuit court's decision granting summary judgment to PICW. Such decisions are reviewed de novo. *Smith v. Katz*, 226 Wis. 2d 798, 805, 595 N.W.2d 345 (1999). In reviewing this decision, we must interpret state statutes and provisions in an insurance contract. Statutory interpretation presents a question of law that we determine independently,

---

[1] All subsequent references to the Wisconsin Statutes are to the 1987–88 version unless otherwise indicated.

while benefiting from the analyses of the circuit court and the court of appeals. *Patients Compensation Fund v. Lutheran Hosp.*, 223 Wis. 2d 439, 454–55, 588 N.W.2d 35 (1999). Our interpretation of an insurance contract is also a question of law that we review de novo. *Smith*, 226 Wis. 2d at 805.

¶ 9. It is undisputed that PICW failed to mail or deliver a separate notice of nonrenewal to NSM as required under Wis. Stat. § 631.36(4)(a). This statute provides:

> Subject to subs. (2) and (3), a policyholder has a right to have the policy renewed, on the terms then being applied by the insurer to similar risks, for an additional period of time equivalent to the expiring term if the agreed term is one year or less. . .unless at least 60 days prior to the date of expiration provided in the policy a notice of intention not to renew the policy beyond the agreed expiration date is mailed or delivered to the policyholder. . . .

Wis. Stat. § 631.36(4)(a). Thus, we must first determine what remedy is available to NSM for PICW's violation of this statute.

¶ 10. NSM argues that the appropriate remedy for this violation is to permit the policy to remain in effect until PICW mails or delivers such notice. This remedy is required, NSM asserts, because, although the statute affords a right of renewal to the policyholder, this right is not triggered unless and until notice is mailed or delivered to the policyholder. Until that time, coverage continues. We disagree with this interpretation.

¶ 11. "Where a statute unambiguously establishes legislative intent in its plain meaning, we apply

that meaning without resorting to extrinsic sources." *Seider v. O'Connell*, 2000 WI 76, ¶ 52, 236 Wis. 2d 211, 612 N.W.2d 659. We find the statute clear and unambiguous. Within the language of the statute, there is nothing to suggest that the right to renewal is triggered by notice from the insurer. Instead, the statute grants this right to any policyholder, that is, "the person who controls the policy by ownership, payment of premiums or otherwise." Wis. Stat. § 600.03(37). Thus, by statute, the policyholder obtains this right upon formation of the contract, not upon any triggering event. NSM's policy also included the language found in Wis. Stat. § 631.36(4)(a).

¶ 12. According to Wis. Stat. § 631.36(4)(a), a policyholder has this right "unless" the insurer mails or delivers notice of nonrenewal to the policyholder at least 60 days prior to the date of expiration provided in the policy. Thus, an insurer may effectively eliminate the policyholder's right to renewal if it provides valid notice of nonrenewal. If notice is not provided, the policyholder retains this right, and barring any application of an exception under § 631.36(4)(b), it may exercise its right to a renewal. This is the remedy afforded to policyholders for violations of § 631.36(4)(a).

¶ 13. Any renewal period afforded to a policyholder is specifically limited under Wis. Stat. § 631.36(4)(a). Under the statute, the renewal is restricted to "an additional period of time equivalent to the expiring term." The expiring term here was for the nine months preceding January 1, 1989. The additional period of time equivalent to the expiring term was nine months, from January 1, 1989 to October 1, 1989. The acts and claim of malpractice, however, occurred after

this period. Thus, PICW's failure to give notice pursuant to § 631.36(4)(a) did not result in any remedy that provided coverage to NSM in this case.

¶ 14. This conclusion is consistent with the statute's primary purpose, which is to ensure peace of mind for a policyholder in relying on its policy despite any desire by the insurer to either cancel the policy or decline renewal without sufficient notice. *See* § 24, ch. 144, Laws of 1969 (preliminary comment). Our interpretation fulfills this purpose by establishing uninterrupted coverage when an insurer has not provided valid notice of nonrenewal. Notice is necessary to warn the policyholder that it must find additional insurance because its current insurance will not be renewed. The statute contemplates that, when notice is not provided according to the statute, the policyholder may not have sufficient time to obtain replacement insurance, and therefore, the policyholder is entitled to a renewal period to maintain coverage. By limiting this renewal to one additional period, however, the statute also balances the competing interest that a policyholder must take some responsibility in minding its policy and discerning whether renewal has occurred in light of evidence to the contrary, such as a failure to receive billing or declarations statements.

¶ 15. In its interpretation of Wis. Stat. § 631.36(4)(a), NSM relies on the court of appeals' holding in *Sausen v. American Family Mutual Insurance Co.*, 121 Wis. 2d 653, 360 N.W.2d 565 (Ct. App. 1984). In that case, Sausen obtained a three-year policy to insure his interest in a farm combine. *Id.* at 655. The insurer failed to notify Sausen that it would not renew the policy, and two months after the expiration date, the combine was damaged by fire. *Id.* Sausen argued

that he was entitled to coverage because, under § 631.36(4)(a), his policy automatically renewed when his insurer failed to provide notice of nonrenewal. *Id.* The insurer disagreed, arguing that its failure to provide notice only resulted in its implied offer of renewal, which must be accepted by the policyholder before the policy expiration date for the policy to be renewed. *Id.*

¶ 16. The court of appeals held that notice of non-renewal or of premium due is required under the statute before a policy lapses and that, because such notice was not provided by the insurer, Sausen's coverage extended beyond the expiration date. *Id.* at 654. Our holding is consistent with the holding in *Sausen*. We, like the *Sausen* court, recognize that, pursuant to Wis. Stat. § 631.36(4)(a), a policyholder is entitled to coverage beyond the date of expiration of the policy if notice of nonrenewal is not provided according to statute. Coverage continues, barring any exceptions, under a renewal of the policy. This conclusion promotes mandatory notice. Our holding, however, goes one step further than *Sausen* because we also find that the continuation of coverage is limited to one renewal period. Indeed, the *Sausen* court did not have to address this issue because the date of the accident in that case fell within this renewal period.

¶ 17. Notwithstanding any renewal of the policy, NSM also argues that it is entitled to coverage under its policy because the policy remained in effect after Frazin's policy was not renewed. NSM acknowledges that its policy required every NSM physician to be covered under a PICW policy with the same limits of liability; however, it asserts that this condition was met after January 1, 1989, by Frazin's reporting

endorsement. We disagree. The terms of the policy required that all NSM physicians have individual professional liability policies with the same limits of liability. Frazin's reporting endorsement did not provide the same limits of liability as NSM's policy because it did not cover claims that arose from acts occurring after December 31, 1988. NSM's policy would have covered such claims. Thus, because Frazin would not have maintained the same limits of liability as NSM, NSM no longer met the terms of eligibility in its policy as of January 1, 1989.

III

¶ 18. We must also decide what remedy, if any, is available to NSM for PICW's failure to notify the commissioner of insurance of NSM's policy termination. Such notification is required under Wis. Stat. § 655.24(4), which states: "The insurer shall, upon termination of a policy of health care liability insurance issued under this chapter by cancellation or nonrenewal, notify the commissioner of the termination."

¶ 19. NSM correctly notes that this statute does not specifically enumerate any remedy for PICW's failure to the commissioner. NSM argues, however, that, in light of *Lang v. Kurtz*, 100 Wis. 2d 40, 301 N.W.2d 262 (Ct. App. 1980), an appropriate remedy would be to require the insurance policy to remain in effect until PICW provided such notice. We conclude that such a remedy is not available to NSM for two reasons.

¶ 20. First, Wis. Stat. § 655.24(4) does not imply or suggest that such a remedy is appropriate. This statute only requires that an insurer "shall. . .notify the commissioner of the termination." This language does

not suggest that the policy would remain in effect or would not be terminated until notice is provided.

¶ 21. In this respect, Wis. Stat. § 655.24(4) differs from the statute at issue in *Lang*. In *Lang*, the court examined Wis. Stat. § 344.34 (1977), which provided: "When an insurance carrier has certified a motor vehicle liability policy. . .the insurance so certified shall not be canceled or terminated until at least 10 days after a notice of cancellation or termination of the insurance so certified has been filed in the office of the secretary." *Id.* at 42 n. 3. Unlike § 655.24(4), the statute in *Lang* clearly implies that coverage would remain in effect if notice were not provided. For this reason, the remedy provided in *Lang* is inappropriate.

¶ 22. The second reason that the policy must not remain in effect is because the legislature has already provided for sanctions against an insurer in such instances. In particular, the legislature authorized the commissioner to apply enforcement procedures and penalties under Wis. Stat. § 601.64 for such violations.[2] We must presume that the legislature was aware that such sanctions were available to the commissioner when it promulgated Wis. Stat. § 655.24(4) in 1985. *See Jones v. State*, 226 Wis. 2d 565, 579, 594 N.W.2d 738 (1999) ("We presume that the legislature enacts laws with full knowledge of existing statutes.").

---

[2] In particular, Wis. Stat. § 601.64(3)(c) specifically states:

> Whoever violates an insurance statute or rule, intentionally aids a person in violating an insurance statute or rule or knowingly permits a person over whom he or she has authority to violate an insurance statute or rule shall forfeit to the state not more than $1,000 for each violation. If the statute or rule imposes a duty to make a report to the commissioner, each week of delay in complying with the duty is a new violation.

¶ 23. Our interpretation preserves the legislature's scheme of financial responsibility. The legislature empowered the commissioner to impose sanctions against insurers when they jeopardize financial responsibility by failing to provide proper notice of termination. We give deference to the legislature's determination that these statutory sanctions are the most appropriate method of achieving financial responsibility in such instances. We will not rewrite this statute.

## IV

¶ 24. In sum, we conclude that PICW is entitled to summary judgment because its failure to give notice to either NSM or the commissioner did not result in an extension of the policy that coincided with any negligent act by Frazin or claim submitted by Magyar. As a result, we affirm the court of appeals' decision.

*By the Court.*—The decision of the court of appeals is affirmed.

DIANE S. SYKES, J., did not participate.