Raymond G. SUGDEN, individually and as Special Administrator of the Estate of James A. Sugden, and Albert E. Sugden, by his Guardian ad Litem, Gregory R. Wright, and Karen C. Sugden, Plaintiffs-Appellants,†

v.

Cory R. BOCK, Defendant-(In T.ct.),

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant-Respondent.

Court of Appeals

*No. 01–1284. Submitted on briefs November 8, 2001.—Decided January 31, 2002.*

2002 WI App 49

(Also reported in 641 N.W.2d 693.)

† Petition to review denied 4-22-02.

344

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Gregory R. Wright* of *Gregory R. Wright Law Offices, S.C.*, Montello.

On behalf of the defendant-respondent, the cause was submitted on the brief of *David J. Pliner* of *Corneille Law Group, L.L.C.*, Madison.

Before Vergeront, P.J., Dykman and Roggensack, JJ.

¶ 1. DYKMAN, J. Albert Sugden, Karen Sugden, and Raymond Sugden, individually and as special administrator of the Estate of James Sugden, appeal from an order and judgment granting the motion for sum-

347

mary judgment of the Sugdens' insurer, American Family Mutual Insurance Company, and dismissing all of the Sugdens' claims against American Family. After an accident that killed James Sugden and injured Albert, American Family paid its policy limits to the Sugdens. The Sugdens contend, however, that they are entitled to at least an additional $25,000 by way of stacking the limits of the several policies they hold with American Family. Although each of the insurance policies contains an anti-stacking provision, the Sugdens argue alternatively that: (1) the provisions are not valid under Wisconsin law; or (2) American Family waived or is estopped from enforcing the provisions. We conclude that the anti-stacking provisions in the American Family policies are lawful under WIS. STAT. § 632.32(5)(f) (1999-2000)[1] and that American Family has not waived nor is it estopped from asserting these provisions. We therefore affirm.

## Background

¶ 2.   For the purposes of American Family's motion for summary judgment, the facts are undisputed. On September 27, 1998, James and Albert Sugden were bicycling on County Highway P when they were struck by an automobile driven by Cory Bock. James was killed, and Albert was injured.

¶ 3.   Because Bock had no automobile insurance, the Sugdens sought to recover under the uninsured motorist provisions of their insurance policies with American Family Mutual Insurance Company. American Family had issued four automobile policies to the Sugden family on four different cars: two to James and

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

Albert's father, Robert, one to their mother, Karen, and one to their sister, Marcella. Each policy had uninsured motorist limits of $25,000 per person and $50,000 per occurrence.

¶ 4.   American Family offered to settle James's claim by making two payments totaling $50,000: $25,000 under one of Raymond's policies and $25,000 under Marcella's policy. American Family's claim representative told the Sugdens' attorney that the payments were intended to satisfy James's claim and that additional coverage remained with respect to Albert's injuries. The Sugdens accepted American Family's settlement offer under these terms.

¶ 5.   The Sugdens sued both American Family and Cory Bock on January 11, 1999. American Family moved for summary judgment, arguing that it had paid the limits under its policy. The circuit court granted the motion, concluding that $50,000 "is the maximum exposure that American Family faces," and that "there is no theory of estoppel or waiver that is going to allow any kind of increase in coverage." The Sugdens appeal.

## Opinion

### A. Validity of Anti-Stacking Clauses

¶ 6.   We review the circuit court's decision granting summary judgment under a de novo standard. *Magyar v. Wisconsin Health Care Liability Ins. Plan*, 2001 WI 41, ¶ 8, 242 Wis. 2d 491, 625 N.W.2d 291. Because there are no disputed facts, the only issue is whether American Family is entitled to judgment as a matter of law. *See* Wis. Stat. § 802.08. In making this determination, the first question is whether the four

349

American Family policies prohibit stacking policy limits in a manner recognized under Wisconsin law.[2] The Sugdens argue that they do not, and therefore Albert is entitled to receive $25,000 under each of the four policies. American Family disagrees and points to the following language contained in the Uninsured Motorists section in each policy of the Sugdens:

**LIMITS OF LIABILITY**

The limits of liability of this coverage as shown in the declarations [25,000 per person, 50,000 per accident] apply, subject to the following:

1.  The limit for "each person" [$25,000] is the maximum for all damages sustained by all persons as the result of **bodily injury** to one person in any one accident.

2.  Subject to the limit for "each person," the limit for "each accident" is the maximum for **bodily injury** sustained by two or more persons in any one accident.

**We** will pay no more than these maximums no matter how many vehicles are described in the declarations, or **insured persons**, claims, claimants, or vehicles are involved.

*The limits of liability of this coverage may not be added to the limits of liability of any similar coverage under any other policy an **insured person** or any member of an **insured persons** household may have.*

---

[2] Stacking is the process by which policy holders are able to add the limits of multiple policies in order to obtain an overall higher maximum limit of coverage. *See Estate of Dorschner v. State Farm Mut. Auto. Ins. Co.*, 2001 WI App 117, ¶ 8, 244 Wis. 2d 261, 628 N.W.2d 414; *Allstate Ins. Co. v. Gifford*, 178 Wis. 2d 341, 348 n.3, 504 N.W.2d 370, 373 (Ct. App. 1993).

(Emphasis added.)

¶ 7. The Sugdens do not argue that the anti-stacking provisions in the insurance policies are vague or ambiguous, or in any way fail to make clear that the policies prohibit stacking with regard to uninsured motorist coverage. Nor could they. The policies clearly state that the limits of coverage under one policy "may not be added" to the limits of coverage under another policy. However, the Sugdens contend that the language used in the American Family policies is not recognized in the Wisconsin Statutes, and therefore has no effect.

¶ 8. Before 1995, anti-stacking clauses were prohibited by WIS. STAT. § 631.43(1). Currently, however, WIS. STAT. §§ 631.43(3) and 632.32(5) permit insurance policies in Wisconsin to limit stacking in a number of specified ways. American Family contends that § 632.32(5)(f) applies in this case. It provides:

> A policy may provide that regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid the limits for any coverage under the policy may not be added to the limits for similar coverage applying to other motor vehicles to determine the limit of insurance coverage available for bodily injury or death suffered by a person in any one accident.

Section 632.32(5)(f).

¶ 9. We agree with American Family that the language in the policy falls within WIS. STAT. § 632.32(5)(f). We have repeatedly noted that an anti-stacking provision in an insurance policy need not be a word-for-word mirror of the statute. *See Gragg v. American Fam. Mut. Ins. Co.*, 2001 WI App 272 ¶ 8, 248 Wis. 2d 735, 637 N.W.2d 477; *Hanson v. Prudential*

351

*Prop. & Cas. Ins. Co.*, 224 Wis. 2d 356, 370, 591 N.W.2d 619 (Ct. App. 1999). Most recently in *Gragg*, we considered whether another policy properly precluded stacking under Wis. Stat. § 632.32(5)(f), and concluded that it did. 2001 WI App 272 at ¶¶ 10–11. That provision provided: "The total limit of **our** liability under all policies issued to **you** by **us** shall not exceed the highest limit of liability under any one policy." *Id.* at ¶ 3. Like the policy in *Gragg*, the provisions in the Sugden policies do not match the language in Wis. Stat. § 632.32(5)(f), but nevertheless "may be enforced to prevent stacking." *Id.* at ¶ 11.

¶ 10. The Sugdens contend that the anti-stacking clauses in their policies cannot fall within Wis. Stat. § 632.32(5)(f) because to do so would make other, more specific provisions in the statute, such as § 632.32(5)(g),[3] "superfluous" since all anti-stacking provisions could fall under paragraph (f). But this is an argument that paragraph (f) is written too broadly and should be directed at the legislature, not the judiciary. It does not explain how the American Family policies fail to meet the requirements of the statute. We therefore reject the Sugdens' argument that Wisconsin law prohibits the anti-stacking provisions contained in the American Family policies.

---

[3] Wisconsin Stat. § 632.32(5)(g) provides:

> A policy may provide that the maximum amount of uninsured or underinsured motorist coverage available for bodily injury or death suffered by a person who was not using a motor vehicle at the time of an accident is the highest single limit of uninsured or underinsured motorist coverage, whichever is applicable, for any motor vehicle with respect to which the person is insured.

## B. Waiver and Estoppel

¶ 11.   Next, the Sugdens contend that, if the policies do prohibit stacking, American Family waived these provisions or is estopped from asserting them. They contend that American Family waived the anti-stacking provisions when it voluntarily stacked Raymond's and Marcella's policies in order to settle James's claim and then told the Sugdens that coverage still remained for Albert.

¶ 12.   For the purpose of its summary judgment motion, American Family does not dispute the Sugdens' allegations regarding the representations of American Family's agent. It also does not dispute that these actions would generally constitute waiver. Rather it argues that anti-stacking provisions are coverage clauses, and therefore cannot be waived.

■

¶ 13.   Both parties acknowledge that the rule in Wisconsin is that a "coverage clause of either an inclusionary or exclusionary nature going to the scope of the coverage assumed cannot be waived" while "a forfeiture clause furnishing a ground for forfeiture or defeasance of liability or a no-action clause can be waived." *Shannon v. Shannon*, 150 Wis. 2d 434, 454, 442 N.W.2d 25 (1989). They disagree, however, over what kind of clause an anti-stacking provision is. The Sugdens argue that because a car accident "is part of the basic risk covered under the policy," then the anti-stacking provision "is a 'forfeiture clause,' which attempts to limit or defeat coverage." American Family asserts that anti-stacking provisions are not forfeiture clauses because they "do not take away coverage which would otherwise exist; to the contrary, they help to define the scope of

353

coverage in the first instance by confirming that the policy limit is, indeed, the maximum benefit available."

¶ 14. Anti-stacking provisions do not fit squarely into either the coverage or forfeiture clause category. And the supreme court has recognized that "[w]hat terms, conditions and provisions in a policy may be considered as forfeiture clauses and what language is considered essentially coverage is not always free from doubt. We think neither the type of insurance policy nor the form of language in the policy necessarily controls the question." *Ahnapee & W. Ry. Co. v. Challoner*, 34 Wis. 2d 134, 142, 148 N.W.2d 646 (1967). However, the court thus far has declined to adopt a more concrete rule.

¶ 15. Further, although the non-waiver and non-estoppel rule is applied almost universally across the nation, courts in other states have likewise struggled, largely unsuccessfully, to a generate a general principle that distinguishes forfeiture from coverage clauses.[4] Some commentators have attacked the rule altogether,

---

[4] *See generally* Annotation, *Doctrine of Estoppel or Waiver as Available to Bring Within Coverage of Insurance Policy Risks Not Covered by Its Terms or Expressly Excluded Therefrom,* 1 ALR 3rd 1139 (1965). Some courts have simply ignored the rule in cases where it would clearly apply. *E.g., Stone v. Waters,* 483 S.W.2d 639, 645 (Mo. Ct. App. 1972) (holding that insurer waived defense that particular automobile was not covered on the insurance policy when it had previously denied coverage on a different ground). As a result, some commentators have concluded that classification by courts is largely outcome oriented and that courts will consider a provision to be a forfeiture clause if it concludes that barring an insured from asserting waiver or estoppel would be inequitable. *See* Comment, *When Will the Smoke Clear?: Application of Waiver and Estoppel in Missouri Insurance Law,* 66 Mo. L. Rev. 225, 243 (2001).

arguing that the difference between coverage and forfeiture clauses is often semantic, that there is no principled reason to distinguish the two, and that a rule insulating insurers from waiver and estoppel is inequitable because it allows insurers to make misrepresentations to an insured without consequence.[5]

---

[5] *See, e.g.,* Note, *Insurance Law-Extension of Coverage by Estoppel,* 1970 Wis. LAW REV. 1234 (1970). The author of this note points out that estopping an insurer from asserting *either* coverage or forfeiture clauses forces the insurer to pay under circumstances not covered by the premium and the function of both types of clauses is the same:

> Both limit the risks assumed by the insurer so that the sums received in premiums are adequate to pay, in addition to expenses and a reasonable return on investment, all claims which the insurer is legally obligated to pay. Given the fact that both types of clauses can have a demonstrable effect upon premium rates, it is difficult to see why courts object to extending the coverage of a policy by estoppel and yet feel free to estop the assertion of a forfeiture provision.

*Id.* at 1237.

The note further argues that the rule against estoppel is flawed on equitable grounds:

> The insurance contract is the hallmark of a contract of adhesion. The contract is entirely prepared by the insurer and sold to buyers who rarely have the time or the ability to fully understand its complicated provisions. This inequality between the parties to the insurance contract, combined with the fact that insurance is considered a necessity by most people, creates a relationship of special trust and confidence between the insurer and the insured. It would seem eminently reasonable under these circumstances to require that the insurer be held to the utmost good faith and full disclosure of all material facts. This is especially true when the insurer holds out its agents as professionals upon whom policyholders are encouraged to rely for competent and complete advice. The insurer, not the insured, has the power to prevent misrepresentations of coverage by the proper selection, training, and

355

¶ 16. To date, Wisconsin courts have recognized as coverage clauses only provisions relating to *whether* a policy covers a particular risk, person or location. *See, e.g., Shannon,* 150 Wis. 2d at 449–50 (provision excluding coverage for bodily injury to an "insured" is a coverage clause); *International Chiropractors Ins. Co. v. Gonstead,* 71 Wis. 2d 524, 528, 238 N.W.2d 725 (1976) (estoppel cannot be used to obtain coverage for someone not actually insured); *Madgett v. Monroe County Mut. Tornado Ins. Co.,* 46 Wis. 2d 708, 176 N.W.2d 314 (1970) (estoppel cannot be used to obtain coverage for property when current owner did not purchase a new policy); *Ahnapee,* 34 Wis. 2d at 140 (provision excluding from coverage certain types of losses is a coverage clause); *Budget Rent-A-Car Sys., Inc. v. Shelby Ins. Group,* 197 Wis. 2d 663, 671–72, 541 N.W.2d 178 (Ct. App. 1995) (provision limiting coverage to audio-video store is a coverage clause); *Utica Mut. Ins. Co. v. Klein & Son, Inc.,* 157 Wis. 2d 552, 562, 460 N.W.2d 763 (Ct. App. 1990) (provision that policy is issued in reliance on the truth of the applicant's representations is a coverage clause); *Hoeft v. United States Fire Ins. Co.,* 153 Wis. 2d 135, 144, 450 N.W.2d 459, 463 (Ct. App. 1989) (in dicta) (expiration date of insurance policy goes to scope of coverage); *Silverton Enterprises, Inc. v. General Cas. Co. of Wisconsin,* 143 Wis. 2d 661, 670, 673, 422 N.W.2d 154 (Ct. App. 1988) (care, custody and control exclusion is a coverage clause). *But see Nugent v. Slaght,* 2001 WI App 282, ¶ 28 (concluding insurer can be estopped from asserting cancellation as a defense).

---

supervision of its agents. Placing the loss on the insurer would provide incentive to use this power.

*Id.* at 1240.

¶ 17.  Wisconsin courts have not considered whether provisions specifying the policy's limits are also insulated from waiver and estoppel, nor have they stated that an insured is precluded from asserting waiver or estoppel in only the above instances. Courts in other jurisdictions, however, have generally considered provisions pertaining to policy limits to be coverage clauses. *See, e.g., Ledoux v. Old Republic Life Ins. Co.*, 233 So.2d 731, 735–36 (La. Ct. App. 1970) (limitation of liability to a stated amount was a statement of coverage rather than a right granted to the insurer to avoid liability); *Shannon v. Great Am. Ins. Co.*, 276 N.W.2d 77, 78 (Minn. 1979) (insurer was not barred from asserting defense that claim exceeded limits in policy even though insurer's agent represented that claim would be settled for more than policy limits).

¶ 18.  Further, the primary rationale for the non-waiver rule is that an insurer should not have to cover a loss for which the insured paid no premium. *Shannon*, 150 Wis. 2d at 452. *See also Madgett*, 46 Wis. 2d at 710 ("Estoppel can block, but it cannot create. It is a barricade that can stop a litigant from proceeding down a roadway that, except for estoppel, would be open to him. It is not a bulldozer that can create a roadway where none in fact exists or ever did.") Applying this rationale to the present case would suggest that the anti-stacking provisions are not subject to waiver or estoppel. The Sugdens paid for policies with a $50,000 occurrence limit. Allowing them to collect more than this amount would give the Sugdens more than they paid for and create coverage where none existed.

¶ 19.  However, as we stated in *Nugent*, a case in which we concluded that an insurer can be estopped from asserting a cancellation defense, there are some

instances where waiver or estoppel may apply even though doing so will create coverage that otherwise would not exist. 2001 WI App 282, at ¶ 24 ("[I]t is apparent that neither *Shannon* nor *Ahnapee* sets forth the general rule that an insurance company cannot be forced to provide coverage whenever it did not receive premium payment for the time period in question."). Nevertheless, *Nugent* failed to explain *when* waiver or estoppel could be used to create coverage other than under the facts of that case, and it is clear that *Nugent* is an exception to the general rule. Further, this case differs from *Nugent* in some important respects.

¶ 20. For instance, the insurer in *Nugent* had allowed its insured to believe during a period of *three years* of negotiations that she had a valid policy in effect at the time of her accident, and the insurer agreed that the insured had no reason to suspect that her policy had been cancelled. *Id.* at ¶ 7. Also, allowing the insurer in *Nugent* to assert a cancellation defense would have completely denied the insured relief, even though she had reasonably believed she had coverage. This suggests a rule similar to those adopted by some other jurisdictions, namely, that coverage may be expanded by waiver or estoppel "where the inequity of forcing the insurer to pay on a risk for which it never collected premiums is outweighed by the inequity suffered by the insured because of the insurance company's actions." *Lee v. Evergreen Regency Co-op. & Mgt. Sys., Inc.*, 390 N.W.2d 183, 186 (Mich. Ct. App. 1986).[6]

---

[6] *See also Harr v. Allstate Ins. Co.*, 255 A.2d 208, 218 (N.J. 1969) (concluding that insurer may be estopped from denying expansion of coverage "where the estopping conduct arose before or at the inception of the contract"); *Spinosa v. Hartford Fire Ins. Co.*, 456 N.Y.S.2d 140, 141 (N.Y. App. Div. 1982) (holding that insurer may be estopped from denying coverage if

¶ 21. In the case before us, no inequity will result from precluding the Sugdens from asserting a waiver or estoppel claim. Although the Sugdens contend that they relied on the agent's assurance that coverage still existed for Albert in accepting American Family's settlement, they do not explain how accepting the settlement was detrimental to them. They received the maximum amount allowed under the four polices for one occurrence, or $50,000. Choosing not to accept American Family's settlement offer would not have increased this amount or entitled the Sugdens to a larger sum. Further, the Sugdens do not allege that they lost significant time or resources due to the agent's misrepresentation. We therefore conclude that American Family did not waive nor is it estopped from applying the anti-stacking provisions.

## C. Remaining Coverage

¶ 22. In settling James's claim, American Family paid $25,000 under one of Raymond's policies and $25,000 under Marcella's policy. The Sugdens contend that, by doing this, American Family chose to stack coverage on its own, and therefore, "there should be available the balance of $25,000 for the uninsured motorist coverage under the $50,000 'occurrence' limits under any single one of the four Sugden policies." This argument appears to be only a slight variation of the

it represented that coverage did in fact exist "for an unreasonable length of time"); *Martini v. Lafayette Studios Corp.*, 676 N.Y.S.2d 808, 814 (NY Sup. Ct. 1998) (concluding that insurer would be estopped from denying claim based on expiration of policy when insurer had initially told insured that claim was covered and prevented insured from filing a timely claim with correct insurer).

previous one, namely, that American Family waived the anti-stacking provision by stacking two policies on its own initiative, and we reject it again here.

■

¶ 23.　The Sugdens cite to no authority supporting this argument and they fail to explain why American Family's choice to satisfy the claim by using two policies rather than one should work to increase the policy limits for an accident. Either way, the policies provide for a maximum of $50,000 for any occurrence regardless of the number of individuals injured. The Sugdens have not alleged that American Family breached its duty of good faith by paying the policy limits to satisfy James's claim or cited any legal authority that would require American Family to pay out additional amounts to Albert above the $50,000 it has already paid. We therefore conclude that the Sugdens are not entitled to an amount greater than the policies' maximum.

*By the Court.*—Judgment and order affirmed.